STATE *v.* CHARLES E. ANDERSON, JAMES KEENAN and DELAWARE S. WRIGHT.

(*May* 16, 1933.)

RICHARDS and RODNEY, J. J., sitting.

*Daniel J. Layton,* Attorney-General, *P. Warren Green* and *Robert H. Richards, Jr.,* Deputy Attorneys-General, for the State.

*James R. Morford* and *John Biggs, Jr.,* for the defendants.

Court of General Sessions for New Castle County, Nos. 86, 90 and 94, March Term, 1933.

RODNEY, J., delivering the opinion of the Court:

We think the motion to withdraw the pleas of not guilty and the filing of the motions to quash the indictments should be granted.

The matters here involved present interesting and important questions of constitutional law. A proper regard for the rights of a defendant require that when seasonable application be made he be allowed to test the validity of

the indictment upon which he is to be tried and not be forced to undergo a trial, and in the event of an adverse verdict, then attack the preliminary and basic charge which might have been done *in limine*. Particularly is this true when as in this case the Court has heard the argument and is convinced of the correctness of the defendants' contention as to the invalidity of the indictment.

From the limited time allowed us for the examination of the matter, we are of the opinion that the motion to quash should be granted.

■ There can be no doubt that an amendment of a Constitution, in the absence of any express limitation, becomes a part of the organic law at the time of its adoption. *Senaca Min. Co. v. Osmun*, 82 *Mich.* 573, 47 *N. W.* 25, 9 *L. R. A.* 770; *Worman v. Hagan*, 78 *Md.* 152, 27 *A.* 616, 21 *L. R. A.* 716. In Delaware, after an affirmative vote of the General Assembly, it is expressly provided that an amendment "shall thereupon become part of the Constitution."

■ There is some diversity of opinion where the amendment is adopted by a vote of the people as to whether it becomes operative upon the canvass of the vote or upon the promulgation of the result by a stipulated officer, but no such question arises here. The amendment was adopted and became part of the Constitution on March 9 by the concurrence of the second of the two Houses of the General Assembly. There was in the amendment no schedule or other expressed intent deferring its operation for any length of time. In the absence of such provision, we cannot supply it. We cannot say that the House of Representatives and the Senate both intended the amendment to lie dormant for upwards of nine months after its adoption, or until December, 1933. To do so, we would have to make that intent applicable to both houses of the General Assembly of 1931, as well as that of 1933, for both houses of both General Assemblies approved the amendment.

The precise question here involved seems to have seldom arisen. One case, however, holds strong similarity. In *Downs v. Comm.*, 92 *Ky.* 605, 18 *S. W.* 526, 527, it appears that the Grand Jury had consisted of sixteen men. The new Constitution was promulgated September 28, 1891, *Section* 248 providing "A grand jury shall consist of twelve persons, nine of whom concurring, may find an indictment." An indictment was found the following month (October, 1891) by the old Grand Jury of sixteen men. The defendant was convicted and on appeal the Court said:

"The section quoted must now be regarded as, from the date mentioned [the date of its adoption], the law controlling the number of persons required to constitute a grand jury; and, as a person cannot be legally tried and convicted of a public offense under an indictment found and returned by a grand jury illegally constituted and empaneled, it necessarily results that the judgment in this case must be and is reversed and remanded with directions to set aside the verdict."

 In the present case, as in the one cited, the Grand Jury was illegally constituted. Here it consisted of over twenty members present in the Grand Jury room and voting on the indictment when the Constitution as amended only provided for fifteen. It is axiomatic that the votes of Grand Jurors must be confined to the legal members. No power exists to declare that any particular fifteen members of the old panel should, after the amendment, be the legal Grand Jurors. The amendment did not change the Grand Jury system, but it did change the number of Grand Jurors, the proportion required for the finding of an indictment and the general composition of Grand Juries. These changes, effective as of March 9, 1933, necessarily resulted in the establishment as of that date of the requirements of a lawful Grand Jury. A Grand Jury not constituted in conformity therewith must have been unlawful.

Constitutional provisions limiting the number of Grand Jurors have uniformly been held to be both mandatory and self-executing. *Wells v. Comm. (Ky.)*, 22 *S. W.* 552; *Sanders v. Comm. (Ky.)*, 18 *S. W.* 528; *State v. Caldwell*, 50

*La. Ann.* 666, 23 *So.* 869, 41 *L. R. A.* 718, 69 *Am. St. Rep.* 465; *Sharp v. Natl. Biscuit Co.,* 179 *Mo.* 553, 78 *S. W.* 787.

We do not think, as contended by the State, that it is essential that the amendment be construed as only becoming operative in December, 1933, in order to prevent the existence of a period when no Grand Jury could be drawn or function. It is true that the Grand Jurors are by statute chosen annually in December by the Jury Commissioners and it is not necessary to consider the power of the Jury Commissioners to draw a new Grand Jury after the constitutional amendment in the absence of the newly conferred authority. We would call attention to *Section* 4266 of the *Revised Code* of 1915, not mentioned in the argument:

"If at any court a sufficient number of grand or petit jurors, drawn and summoned as aforesaid, do not appear; or if the panel returned by the Sheriff be quashed by the Court, the Court may award a *tales de circumstantibus,* or make such other order as it may deem expedient for filling up the requisite number of jurors to serve at such Court."

This is an old provision existing in almost its present form since 1793 (2 *Del. Laws,* 1074) and in precisely the present phraseology since 1852 (*Revised Code* 1852, *page* 387). Under this statutory provision we think that the Court would have had little difficulty, after the passage of the constitutional amendment changing the number of Grand Jurors in providing a new and legal Grand Jury for the performance of its public duties by means of a *tales de circumstantibus.*

In *State v. Windsor,* 5 *Harr.* 512, at page 513, the Court exercised the power under this statute with reference to the entire array of petit jurors.

While not determinative of or particularly material in the instant case, attention should be called to *State v. Brown,* 2 *Marv.* 380, 36 *A.* 458. This was a capital case in Court of Oyer and Terminer which met only upon judicial precept to try capital cases. Statutes provided that indictments in capital cases might be found by the Grand Jury summoned

for the Court of General Sessions (an inferior Criminal Court, not having jurisdiction of capital cases) and be then removed by *certiorari* to the Court of Oyer and Terminer; an alternative method of finding indictments directly in the Court of Oyer and Terminer was provided in which case the Grand Jury was expressly summoned in the precept calling for the meeting of the Court. In *State v. Brown* the Grand Jury was not expressly called in the precept but a notation to that effect was upon the margin. The indictment was not found in Court of General Sessions and removed by *certiorari*. No objection was made by plea of abatement or motion to quash, but after trial and conviction objection was made by motion in arrest of judgment. The Court was evenly divided and of four Judges sitting Lore, C. J., and Cullen, J., were of the opinion that the indictments were void. Grubb and Marvel, J. J., sustained the indictments on the ground that all objection thereto had been waived by going to trial.

We are of the opinion that after the adoption of the constitutional amendment no valid indictment could be presented by any Grand Jury except that such Grand Jury be constituted as that amendment prescribes.

Because the present indictments were found after the adoption of the constitutional amendment, but not by a Grand Jury constituted as required by that amendment, we think such indictments are illegal and invalid.

The motions to quash are granted.