STATE ex Rel. O'CONNELL, Relator, *v.* DUNCAN, County Clerk, Respondent.

(No. 7,938.)

(Submitted February 20, 1939.  Decided March 21, 1939.)

[88 Pac. (2d) 73.]

142

*Mr. Wellington D. Rankin* and *Mr. Arthur P. Acher*, for Relator, submitted a brief; *Mr. Rankin* argued the cause orally.

*Mr. Harold K. Anderson*, County Attorney of Lewis and Clark County, and *Mr. Floyd O. Small*, Deputy County Attorney, submitted a brief; *Mr. Anderson* argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

This is an original proceeding by Brian D. O'Connell, who was re-elected sheriff of Lewis and Clark county November 8, 1938, and who now seeks a writ of mandamus to compel the respondent to issue to him a certificate showing his term of office to be for a period of four years, the respondent having issued to relator a certificate of election showing him to have been elected sheriff of Lewis and Clark county for a term of but two years.

By Chapter 93 of the 1937 Session Laws, the Legislative Assembly of the State of Montana provided that the question be submitted to the qualified electors of the state at the general election to be held in November, 1938, as to whether or not section 5 of Article XVI of the Constitution should be amended. The purpose of the amendment was to change the section so as to provide that all county officers whose term of office is therein provided for should be changed from a term of two to four years.

Section 4 of Chapter 93 provides as follows: "The votes cast for and against the amendment herein proposed shall be counted, canvassed and determined by such officials and in such manner as provided by law, and if a majority of all votes cast at such election for and against such amendment shall be in favor of such amendment, the governor of the State shall so declare by public proclamation, and the amendment shall be in full force and effect as a part of the Constitution from and after the date of such proclamation."

The important part of this section of Chapter 93 involved is the provision that if adopted by the voters, the amendment shall become effective on the date of the Governor's proclamation.

The Constitution itself provides for the manner in which it may be amended by section 9 of Article XIX, and after providing the manner in which proposals for amendment shall be adopted by the respective houses of the assembly, and outlining the instructions to the Secretary of State as to the manner of publishing notice of the proposed amendments, it provides, "and at said election the said amendment or amendments shall' be submitted to the qualified electors of the state for their approval or rejection and such as are approved by a majority of those voting thereon shall become part of the Constitution * * * ." It will be noted that no mention is made in the Constitution itself about the necessity of any proclamation by the Governor before an amendment shall become a part of the Constitution.

It is contended, in effect, by the relator that notwithstanding Chapter 93 provides that the amendment clearly appears to require the proclamation of the Governor before the amendment shall become effective, that relator's term of office, beginning on the first Monday of January, 1939, is for four years, and by reason of the fact that not only the relator but all other county officers elected at the general election in November, 1938, are in doubt as to the terms for which they were elected; that for that reason it has become expedient that the matter be judicially determined, and that this proceeding is instituted on behalf of

relator and all other county officers similarly situated. Relator prayed that an alternative writ of mandamus issue, which was duly granted by this court. On its return oral arguments were had, briefs submitted and the matter was taken under consideration by this court in order to determine whether the writ should be made permanent.

The respondent appeared by counsel in opposition to the contentions of relator, and grounds his opposition upon the argument, (1) that the amendment voted on on November 8, 1938, was not effective until the proclamation of the Governor, which was published December 2, 1938; (2) that in the construction of a constitutional and statutory provision relating to terms of office there is a presumption under the law that where there is a doubt as to the length of the term, the shortest shall prevail; and (3) that the intention of the legislature and practical operation of the law compel the conclusion that the amendment does not become effective, or apply to county officers mentioned until the general election of 1940. The authorities cited in support of these contentions are not in our opinion directly pertinent, but have to do with controversies arising where one had been appointed to fill an unexpired term, or where a new office had been created by law and the incumbent contended for the right to hold beyond the next general election.

The matter is presented by counsel for relator under the following headings: (1) The term of a constitutional office can be changed or the office abolished at any time by constitutional amendment; (2) the constitutional amendment under consideration went into effect November 8, 1938; (3) that a constitutional provision, such as that under consideration, is self-executing; and (4) that the new constitutional amendment applies to county officers elected at the same election at which the amendment was adopted.

In support of the first proposition, *State ex rel. Corry* v. *Cooney,* 70 Mont. 355, 367, 225 Pac. 1007, 1012, is quoted from as follows: ''As to interference with the terms of the officers of the county, it is of course clear that even a constitutional office may be abolished by a new Constitution or by an amendment to

an existing one. (*Eckerson* v. *Des Moines,* 137 Iowa, 452, 115 N. W. 177; *Reals* v. *Smith,* 8 Wyo. 159, 56 Pac. 690; *State* v. *Evans,* 166 Mo. 347, 66 S. W. 355; *Mial* v. *Ellington,* 134 N. C. 131, 46 S. E. 961, 65 L. R. A. 697; *Mayor* v. *State,* 102 Miss. 663, 59 So. 873, Ann. Cas. 1915A, 1213.)'' (See, also, *State ex rel. Teague* v. *Board of County Commrs.,* 34 Mont. 426, 87 Pac. 450.)

It is clear from the authorities generally, and from the Constitution itself, that public offices may be created, abolished or the term shortened or lengthened by constitutional amendment at any time the sovereign power, in our government the people, chooses to express their will to that effect in the manner provided in the Constitution.

At the general election in 1900 the voters of all of the counties elected county commissioners for four-year terms as then provided in the Constitution. The legislative assembly in its session of 1901 submitted a constitutional amendment whereby the existing plan was abolished and a new one provided. The new plan contemplated the election of one commissioner every two years for a six-year term. In order that the change might be more satisfactorily inaugurated the amendment provided that the commissioners in office remain therein until the first Monday in January, 1907, whereas, without the amendment, the terms would have expired on the first Monday of January, 1905. Every county commissioner in the state was given an additional two years in office. This court approved the plan. (*State ex rel. Teague* v. *Board of County Commrs.,* supra.) It will thus be observed that the right to extend the terms of officers after their election resides in the people.

The next contention, that the amendment went into effect on November 8, the date of the last election, is supported by numerous authorities, among which are the following: *State* v. *Anderson,* 35 Del. 407, 5 W. W. Harr. 407, 166 Atl. 662; *Seneca Min. Co.* v. *Secretary of State,* 82 Mich. 573, 47 N. W. 25, 9 L. R. A. 770; *In re Senate File No. 31,* 25 Neb. 864, 41 N. W. 981; *Dillon* v. *Gloss,* 256 U. S. 368, 41 Sup. Ct. 510, 65 L. Ed. 994; *Matheny* v. *Independence County,* 169 Ark. 925, 277 S. W. 22; *State ex rel. McNamara* v. *Campbell,* 94 Ohio St.

403, 115 N. E. 29; *Perry* v. *Consolidated Special Tax School District No. 4,* 89 Fla. 271, 103 So. 639; *In re Advisory Opinion to the Governor,* 34 Fla. 500, 16 So. 410.

In *Dillon* v. *Gloss,* supra, it was said: "The provisions of the Act which the petitioner was charged with violating and under which he was arrested (Title 2, secs. 3, 26) were by the terms of the Act (Title 3, sec. 21) to be in force from and after the date of the Eighteenth Amendment should go into effect, and the latter by its own terms was to go into effect one year after being ratified. Its ratification, of which we take judicial notice, was consummated January 16, 1919. That the Secretary of State did not proclaim its ratification until January 29, 1919, is not material, for the date of its consummation, and not that on which it is proclaimed, controls. It follows that the provisions of the Act with which the petitioner is concerned went into effect January 16, 1920."

In the case of *Matheny* v. *Independence County,* supra, quoting from a provision of the Arkansas Constitution similar to ours, it is said: "It will be noted that the Constitution itself provides that, if a majority of the electors voting at the election at which the amendment is submitted adopt it, the amendment shall become a part of the Constitution. Hence its adoption does not depend upon the declaration of the speaker of the House of Representatives, or the publication by the Governor of his proclamation to that effect as provided in section 1482 of the Digest. If the speaker and the Governor were to neglect or refuse to discharge their duties under the statute, the amendment would nevertheless be a part of the Constitution of the state, because it is the will of the people expressed in the mode prescribed in the Constitution. Our construction of the Constitution quoted above is that it is the ascertained majority of the vote of the people, and not the declaration of the speaker and the proclamation of the Governor, which gives force and effect to the amendment. * * * Neither the certificate directed to be signed by the speaker of the House and the president of the Senate, to be filed in the office of the Secretary of State, nor the proclamation issued by the Governor, affect in any

manner the adoption of the amendment. These acts are merely directory in order to give the necessary information to the people that an amendment has been adopted. The necessity of acting in the premises arises from the inconvenience which might result to the public by their noncompliance with the statute. But it is the will of the people as expressed under the direction of the Constitution which makes the amendment a part of the Constitution.''

The other citations relative to this point are of similar import, and in our judgment such conclusions are unanswerable. If it were put within the power of any officer to defeat or delay the express will of the people in such a vital matter, grave harm might result, notwithstanding the fact that in such a case the Governor might be compelled by mandamus to issue his proclamation. It may be assumed that no Governor would refuse or neglect to issue his proclamation, but as has often been said by this court, it is not what is done under the color of law, but what might be done that is dangerous.

On relator's contention No. 3, we find the following authorities: *Davis* v. *Burke,* 179 U. S. 399, 21 Sup. Ct. 210, 45 L. Ed. 249; *Porter* v. *First Nat. Bank of Panama City,* 96 Fla. 740, 119 So. 130, 519; *Cruse* v. *Fischl,* 55 Mont. 258, 175 Pac. 878; *State ex rel. Stringfellow* v. *Board of Commrs.,* 42 Mont. 62, 111 Pac. 144; *State ex rel. Bennett* v. *State Board of Examiners,* 40 Mont. 59, 104 Pac. 1055, 1057.

In *State ex rel. Bennett* v. *State Board of Examiners,* supra, it was said: ''A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law.'' The above quotation was adopted from Cooley's Constitutional Limitations, page 99.

In *Davis* v. *Burke,* supra, after also quoting from Cooley on Constitutional Limitations as above, it is said: ''Where a constitutional provision is complete in itself it needs no further

legislation to put it in force. When it lays down certain general principles, as to enact laws upon a certain subject, or for the incorporation of cities of certain population, or for uniform laws upon the subject of taxation, it may need more specific legislation to make it operative. In other words, it is self-executing only so far as it is susceptible of execution. But where a Constitution asserts a certain right, or lays down a certain principle of law or procedure, it speaks for the entire people as their supreme law, and is full authority for all that is done in pursuance of its provision. In short, if complete in itself, it executes itself.''

We think it is clearly obvious that the amendment to the Constitution under consideration is self-executing, and, such being the case, it went into effect on November 8, 1938, at the same time the county officers were elected that are referred to in its provisions.

It is further contended in this connection that when the ▮▮▮▮ amendment went into effect on November 8, 1938, county offices referred to in the amendment no longer existed for a two-year term, and, necessarily, the relator and all others in whose behalf he brought this proceeding were elected for a four-year term, and in support of that contention *United States* v. *Chambers*, 291 U. S. 217, 54 Sup. Ct. 434, 435, 78 L. Ed. 763, 89 A. L. R. 1510, is cited. It was there said: ''Upon the ratification of the Twenty-First Amendment, the Eighteenth Amendment at once became inoperative. Neither the Congress nor the courts could give it continued vitality.'' Applied to the controversy at bar, this means the two-year term for county offices ceased to exist November 8, 1938.

The fourth contention is grounded upon the conclusion that the election of the officers and the adoption of the amendment were coincident. On this point we also have a precedent in this jurisdiction, and which is in accord with the rule in others. The plan employed at the time the Constitution of this state was submitted to the people for adoption or rejection supports our conclusions in the instant case. By the terms of one of the ordinances a day was designated upon which the people should

vote on the question of ratification. The ordinance also provided for the election of a full quota of state officers at the same election. Thus, it will be observed, at one election and at the same time the people voted on the question of the adoption of the Constitution and for candidates to fill the offices created thereby. The Constitution could have had no actual existence until and unless a majority of the people breathed the breath of life into it on the first Tuesday of October, 1889. Under no theory could it be said that it was actually adopted until the votes were all cast that day and the polls were closed. So it is then obvious that the election of the state officers occurred while the Constitution had a potential existence only and before it had actual life or vitality.

In *State ex rel. Mathews* v. *Houndersheldt,* 151 Minn. 167, 186 N. W. 234, 236, it was said: "The ordinary voter casts his ballot for the man he wishes to have elected, uninfluenced by any consideration of the length of his term of office. In the present instance, if he thought about it at all, he might properly conclude that, if the amendment was adopted, the candidate elected would take office for a term of four years. There was nothing in the language to suggest that the operation of the amendment was to be postponed for two years. After December 1, 1920, the original provision of the Constitution was no longer in effect. It is difficult to presume that it was the intention that the duration of a term of office which began after December 1st should be fixed by a provision which had been superseded by the amendment. * * * In its final analysis, we think the question is this: When the electors voted to amend the Constitution by enlarging the term of office of probate judges, and at the same time elected the judges, should it be presumed that they were voting for candidates to fill the office for the term fixed by the provision of the Constitution in effect at the time of the election? The reasoning in *People* v. *Foley,* supra [148 N. Y. 677, 43 N. E. 171], would apparently lead to an affirmative answer. But there is a clear distinction between that case and this. There the Legislature enlarged the term of office the day after the election at which candidates were

voted for. Here the people themselves were legislating and at the same time selecting public officers. When they gave their approval to the amendment, their part in changing the organic law of the state was done. So far as they are concerned the amendment was adopted on November 2d, and all there was left to do was to have the Governor announce the fact of its adoption. It is hardly accurate to say that if the amendment is given a retrospective effect it is held to apply to probate judges elected in 1920. Their election and the adoption of the amendment were coincident. The Governor's proclamation and certificates of election issued merely made a record of what had been done by the electors whose votes gave vitality to the amendment and conferred office upon the successful candidates.'' (See, also, *Worman* v. *Hagan,* 78 Md. 152, 27 Atl. 616, 21 L. R. A. 716; *State ex inf. Evans* v. *Holman,* 73 Or. 18, 144 Pac. 429; *State ex rel. Thompson* v. *Winnett,* 78 Neb. 379, 110 N. W. 1113, 15 Ann. Cas. 781, 10 L. R. A. (n. s.) 149.)

Our conclusion is that on and after the 8th day of November, 1938, there was but one term of office provided for the county officers referred to in the amendment to the Constitution then adopted, and that the four-year term immediately became effective and the two-year term ceased to exist at that time, and, hence, the relator is entitled to the relief prayed.

Let the writ issue.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ANGSTMAN, STEWART and ERICKSON concur.