DAVID WARREN QUILLEN, Defendant Below, Appellant, v. THE STATE OF DELAWARE, Plaintiff Below, Appellee.

(*April* 1, 1955.)

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, J. J., sitting.

SOUTHERLAND, C. J.:

Defendant's petition for reargument is directed to that part of our opinion dealing with his motion to quash the panel of petit jurors. We held that he had been guilty of inexcusable delay in not making this motion until the day of trial, after the court had convened and the jurors and witnesses were in attendance. Defendant now avers that a similar motion, on similar grounds, had been filed in the case on May 14, 1954 directed to an order of the Superior Court of May 12, 1954 for the summoning of additional jurors to serve at the April Term, then in session. This prior motion, says defendant, raised the same question of law as the motion made on the eve of trial, and was overruled by the Superior Court. Hence defendant argues that at the trial he was bound by the ruling, and was required only to renew the motion as a formal matter in order to reserve the point for argument on appeal.

The facts above stated did not appear in the record that was before us when the appeal was heard. They are now embodied in a supplemental record that has since been certified to us by the Superior Court, pursuant to application made to that court with leave of this Court.

The supplemental record falls somewhat short of clearly establishing the making of the prior adverse ruling relied upon. But the Attorney General has made no point of this, and we think the defendant is entitled to a decision on the merits of the matter.

The basic facts are stated in our prior opinion. See *Quillen v. State*, 10 *Terry* 114, 110 *A.* 2d 445, 455. Of the sixty-four jurors drawn for the June Term twenty-four had been excused. Under the authority of 10 *Del. C.* § 4510 the Superior Court directed the Jury Commissioners to draw forty-six additional jurors. The statute provides for an order "for filling up the requisite number of jurors to serve at the Court." The "requisite number" appears to refer to the number sixty-four—that is, to the total number required to be drawn in a capital case, since the number of jurors who actually serve is seldom the exact number drawn.

Hence the court's order exceeded the authority conferred by the statute and brought the total panel up to eighty-six instead of sixty-four—an excess of twenty-two. The question is whether this irregularity required the quashing of the additional panel.

Statutory provisions regulating the manner of drawing and summoning jurors are generally held to be directory in nature and not mandatory unless prejudice to the defendant's rights is shown, or may be inferred as a matter of law. *Pitts v. White*, 10 *Terry* 78, 103 *A.* 2d 245, *affirmed* 10 *Terry* 134, 111 *A.* 2d 217; 1 *Thompson on Trials*, §§ 13, 33, 34; 92 *A. L. R.* 1109, *annotation*. Examples of prejudice are found in cases in which the jury has been drawn by unauthorized persons. Such a flagrant disregard of the law opens the door to fraud and imports prejudice. See *State v. Rouner*, 333 *Mo.* 1236, 64 *S. W.* 2d 916, 92 *A. L. R.* 1099; *Rhodman v. State*, 153 *Miss.* 15, 120 *So.* 201; *Peak v. State*, 50 *N. J. L.* 179, 12 *A.* 701. But if the irregularity consists only in the drawing and summoning of more jurors than the statutory number, it is generally held that, absent a showing of actual prejudice, the error is no ground for quashing the panel. *State v. Medley*, 66 *W. Va.* 216, 66 *S. E.* 358, 360-361; *Anderson v. State*, 5 *Ark.* 444, 445; *Umble v. State*, 207 *Ala.* 508, 93 *So.* 531; *Barber v. James*, 18 *R. I.* 798, 31 *A.* 264.

So far as concerns the substantive rights of a defendant in a criminal case, it would seem that if any prejudice flows from disregard of the statutory number of jurors, it would be more likely to come from the summoning of an insufficient number rather than from an excessive number. If the panel in attendance is small, there is a possibility of exhausting it by challenges, and the court might have to call talesmen whose background might be unknown to the defendant.[1] But it is difficult to find any prejudice from the attendance at the trial of some additional qualified jurors.

---

[1] At least, that result could have happened under the former statute relating to talesmen. 1935 *Code*, Par. 4737.

■ Statutes regulating the number of jurors to be summoned and the manner of selecting them should be construed in the light of the underlying principle that a litigant has no vested right in the attendance of any particular set of jurors; "all that he can insist upon is an impartial jury, and, at the most, a substantial compliance with the statutes governing the selecting and summoning of jurors." 31 *Am. Jur., "Jury"*, § 102.

Defendant argues that § 4510, although using the word "may" and permissive in form, is mandatory in meaning, and requires the court, whenever an insufficiency of jurors exists, to enter an order filling up the panel to sixty-four, the number fixed by § 4517. Hence, he says, the provision relating to the additional number to be summoned must be construed as mandatory.

This argument, if sound, would lead to a surprising result. The court, upon excusing one juror, would have to enter a special order to draw another. This unreasonable result suggests that there is a fallacy in the reasoning. It is not difficult to find.

■■ The argument assumes that the statutes require the *attendance* of sixty-four jurors at the trial. This is plainly incorrect. The statutes refer only to the number of jurors to be *summoned,* not to the number who may actually serve. It is common knowledge that the number in attendance is frequently less than the number summoned because of the inevitable excuses from service, sometimes granted at the last moment. In administering a statute such as § 4510, the court necessarily has a discretion to determine whether the probable insufficiency of jurors is great enough to make it advisable to draw an additional panel.

■ We are of opinion that § 4510 is primarily administrative in character, designed to enable the court to transact the business of litigation with efficiency and dispatch. In *State v. Medley, supra* [66 *W. Va.* 216, 66 *S. E.* 361], a statute fixing the number of jurors to be summoned was termed by the court "an

economic provision to avoid the summoning of more jurors than might be really needed to transact the business of the court".

We hold that § 4510 is directory and not mandatory. It follows that the summoning of the extra twenty-two jurors is not ground for quashing the panel unless prejudice to the defendant is shown.

Defendant contends that he was in fact prejudiced in two respects:

First, it is said that the addition to the panel of the extra jurors thrust upon defendant's counsel a serious burden of additional labor of investigation. We are not impressed with this argument. The order for the additional panel was made on July 10th. On July 17th the case was continued for trial to September 21st. The elapsed time appears to be ample for any reasonable investigation of the members of the panel, even with the excess, and the record is bare of any showing that counsel were actually at a disadvantage. And no objection of this sort was made to the trial court. In effect, defendant chose to stand on the proposition that prejudice in this respect may be inferred as a matter of law—a proposition that we do not accept.

We do not mean to imply that prejudice could never be inferred from the summoning of an excessive number of jurors. Conceivably, the number might be so large as to establish in itself a condition prejudicial to the accused, taking into consideration the time required to investigate the members of the panel and the time available for the purpose. But in this case no such inference can be drawn.

Second, it is said that the drawing of an excessive number of jurors seriously disturbs the ratio of jurors to challenges. Defendant argues that in a capital case the ratio of total number of challenges to the number of jurors is as 32 to 64, and that this ratio stems from long experience and was arrived at as being fair as between the state and the defendant.

This point is not developed on the brief, and it is not immediately apparent to us how a change in the ratio of total challenges to the total number of jurors drawn prejudices the defendant as against the State. It would affect the State to the same extent. Of course, in fixing the number of jurors to be summoned, the legislature and the courts must take into account the total number of peremptory challenges, as well as the number of possible challenges for cause, possible excuses from service, and so forth. But this relationship between the number of jurors and the total number of challenges derives from the desirability of providing a number of jurors in attendance adequate for the transaction of the business of litigation. Variations in the number of jurors affect the State and the defendant alike. They have no necessary connection with the substantive right of the defendant, which is the drawing of a jury of qualified persons in an impartial manner and in substantial accordance with law.

Defendant's argument seems to be based upon the assumption that the present ratio of one-half—a total of 32 challenges to 64 jurors—represents a long established policy designed in some way to preserve a fair balance between the State and the defendant. This assumption finds no support in the history of the statutes regulating the number of challenges and the number of jurors to be summoned to attend the former Court of Oyer and Terminer.

In the first place, it was not until 1883 that the State was accorded the right of peremptory challenge in capital cases;[2] whereas the defendant in such a case has had from earliest times the right to challenge twenty jurors peremptorily.[3]

In the second place, the number of jurors to be summoned to attend that court has varied widely from time to time. From

[2]Act of Jan. 24, 1883, 17 *Del. L.* c. 229.

[3]See the account of the trial of "the Long Finn", Dec. 6, 1679; *Documents Relating to the Colonial History of the State of New York*, Vol. XII, p. 467 *ff.*; Act of 1719, 1 *Del. L.* c. 22, § 4.

1742 to 1793 the number was 48;[4] from 1793 to 1811 the number for all courts was from 36 to 60, with power in the court to draw up to 84.[5] From 1811 to 1829 the number was 36,[6] and from 1829 to 1883 it was 48.[7] It was increased to 54 in 1883[8], and to 64 in 1907.[9] True, in 1883, when the State was given ten peremptory challenges in capital cases, the number of jurors for the Court of Oyer and Terminer was increased to 54; but the subsequent increase to 64 in 1907 bears no relation to any increase in the number of total challenges, which remained at 30 until 1919, when it became 32.[10]

Historically, therefore, the number of jurors to be drawn has borne no relation whatever to the number of defendant's challenges, and has borne no fixed or close relation to the total number of challenges. This fact supports the statement made above, *viz.*, that the number of jurors drawn has been fixed by considerations of economy and convenience in administration.

We find no basis in the record to support the claim that the defendant was prejudiced by the drawing of the extra twenty-two jurors.

The petition for reargument is denied.

[4]Act 15 Geo. II, 1 *Del. L.* c. 94, §1.
[5]Act Feb. 2, 1793, 2 *Del. L.* c. 8, § 3 (p. 1072).
[6]Act Feb. 2, 1811, 4 *Del. L.* c. 158, §4.
[7]Act Feb. 11, 1829, 7 *Del. L.* c. 190, § 6.
[8]Act Jan. 25, 1883, 17 *Del. L.* c. 220.
[9]Act May 29, 1907, 24 *Del. L.* c. 244, § 12.
[10]Act Mar. 5, 1919, 30 *Del. L.* c. 238.