STATE OF DELAWARE v. GILBERT MINNICK and MILDRED MINNICK.

STATE OF DELAWARE V. GILBERT MINNICK, MELVIN F. DOWN-ING, WILLIAM V. CHARLTON, ALBERT L. REVERDITO, RON-ALD H. THERKILDSEN.

STATE OF DELAWARE V. RAYMOND EMORY, FRANCIS L. CONLEY, WILLIAM V. CHARLTON, RONALD H. THERKILDSEN.

STATE OF DELAWARE V. RONALD H. THERKILDSEN.

(*September* 30, 1960.)

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, J. J., sitting.

*Januar D. Bove, Jr.*, Attorney-General, and *Max S. Bell, Jr.*, Deputy Attorney-General, for the State.

*John Merwin Bader* and *John Biggs, III*, for defendants the Minnicks, Downing, and Emory; *Donald W. Booker* for defendants Conley and Therkildsen; *David B. Coxe, Jr.*, for defendant Charlton; and *Anthony F. Emory* for defendant Reverdito.

Supreme Court of the State of Delaware, No. 23, 1960.

SOUTHERLAND, C. J.:

On September 14, 1959, the Grand Jury of New Castle County convened. Fifteen grand jurors had theretofore been summoned and sworn, and all were in attendance on September 14. On September 17 the Superior Court excused one grand juror from further service. On September 22 and 23 fourteen grand jurors were in attendance. They heard witnesses in support of the indictments in the four cases listed above, and on September 23 returned true bills. The defendants all moved to dismiss the indictments on various grounds. The only ground here pertinent is the objection that the indictments were found by a grand jury consisting of fourteen members only. It is argued that the Constitution forbids the finding of an indictment by fewer than fifteen jurors. This is the central question embodied in the three questions certified by the Superior Court. These questions are as follows:

1. Of how many members did the Grand Jury for New Castle County consist on September 22 and September 23, 1959?

2. If the Grand Jury for New Castle County on September 22 and September 23, 1959, consisted of other than fifteen members, were the indictments returned against the defendants in the within matters valid?

3. Can a New Castle County Grand Jury validly operate under any circumstances with less than fifteen members in attendance?

Because of the importance of a prompt decision of the matter, we decided the case and on September 16, 1960, entered an order answering the certified questions. We ruled that the grand jury was legally constituted. The following are the reasons for our decision:

1. We entertain no doubt that the effect of the excuse of one grand juror from further service reduced the panel to fourteen. The contrary suggestion (that the excused grand juror was still technically serving) we cannot follow.

He was not excused conditionally, but finally. The power of the court so to excuse a juror is not questioned.

2 and 3. Does the Constitution require that fifteen jurors must be *in attendance* for the performance of the duties of the grand jury?

Our former constitutional provision respecting juries provided simply:

"Trial by jury shall be as heretofore." (Constitutions of 1792, 1831 and 1897. Art. 1, Sec. 4, *Del. C. Ann.*)

In 1933 this section was amended by adding the following:

"Provided, however, that Grand Juries in New Castle County shall consist of fifteen members, one of whom shall be selected from, and shall be a resident of, each representative district in said county, and the affirmative vote of nine of whom shall be necessary to find a true bill of indictment; and the Grand Juries in Kent County and in Sussex County shall consist of ten members, one of whom shall be selected from, and shall be a resident of each representative district in the County in which he or she is selected, and the affirmative vote of seven of whom shall be necessary to find a true bill of indictment."

The contention of the defendants is that this amendment requires that fifteen grand jurors must always be in attendance for the transaction of business.

A statement of the grand jury practice under the former constitutional provisions will show the unsoundness of this contention.

The former practice derives, of course, from the common law. Originally, the number of grand jurors to be summoned (the panel) was indefinite. Under the English practice a precept issued to the Sheriff, generally specifying twenty-four

jurors to be returned, but in practice the Sheriff usually returned forty-eight. 1 *Chitty's Criminal Law*, p. 254. An early colonial statute specifically set the number at twenty-four. Act of 15 Geo. II, 1 *Del. L.* c. 94, p. 241. If all appeared, one juror was always excused, and not more than twenty-three served. See 1 *Constitutional Debates*, p. 588. At least twelve must serve, since concurrence of that number was required to find an indictment; and there must not be more than twenty-three, because otherwise there might be an equal division of opinion. 1 *Chitty's Criminal Law*, p. 251.

But it was never necessary, under our former practice, that twenty-three jurors be *in attendance* for the transaction of business. There was no legal requirement that any specific number be in attendance, provided that there were at least twelve. In practice, as appears from the stipulated facts, it seldom occurred that twenty-three actually served. Because of death, illness, excuses from service and so on, this was inevitable. Compare our remarks on this point in *Quillen v. State*, 49 *Del.* 163, 112 *A.* 2d 848, relating to petit juries.

The same practice has obtained under the 1933 amendment. Thus during the last eight years fewer than fifteen jurors were in attendance during at least half of the time.

It is quite clear to us that in adopting the 1933 amendment the General Assembly did not intend to change the pre-existing practice in the manner now asserted.

Defendants' argument necessarily comes to this: that the amendment intended to effect a radical change in the practice relating to the number of grand jurors *in attendance,* and thus change the system under which the Grand Jury operated. No such change has ever been recognized. In *State v. Anderson*, 35 *Del.* 407, 413, 166 *A.* 662, 664, Judge Rodney said:

"The amendment did not change the Grand Jury system, but it did change the number of Grand Jurors, the pro-

portion required for the finding of an indictment and the general composition of Grand Juries."

The form of the amendment rebuts the suggestion of a change in the system. The original wording—"Trial by jury shall be as heretofore"—was left untouched. There was merely added a proviso, the essence of which reduced the number of the panel and the number of votes required to indict.

Defendants' construction of the 1933 amendment entails highly unreasonable results. The death or serious illness of a juror, or any other reason justifying his release from service would require the Grand Jury to cease its work until a replacement could be summoned and sworn in. And if the discharge of a juror was required while the jury was engaged in hearing a case, all the witnesses would have to be reexamined. No such cumbersome and time-consuming procedure has ever been followed. Moreover, in our opinion, it was never contemplated.

Indeed, the logical consequence of the contention is that if one grand juror is delayed for half a day in reporting for duty, because of weather or transportation difficulty, the Grand Jury cannot function. Some of the defendants admit that this unreasonable result would follow; others insist upon a supposed distinction between "vacancy" and "absence", which in our opinion has no basis in the law. Either the Constitution requires the *attendance* of fifteen jurors to find an indictment, or it does not.

In short, the whole thrust of defendants' argument confuses the requirement for *summoning* the Grand Jury with the requirements relating to attendance. A similar argument was made in *State v. Quillen, supra,* and was rejected.

Defendants seek to draw an analogy from the requirement that twelve petit jurors must serve. It is said that in like manner fifteen jurors must serve.

That analogy does not hold. The correct comparison is between the concurrence of twelve petit jurors in a verdict and the concurrence of nine grand jurors in the finding of an indictment.

Defendants cite cases holding that if the Grand Jury consists of *more* than the number constitutionally fixed, it cannot legally function. It has been so held in this State. *State v. Anderson, supra.* Of course, unauthorized persons may not act as grand jurors. But it does not follow that fewer than the number fixed for summoning may not act. Defendants cite our comment in *Quillen v. State, supra*, to the effect that prejudice is more apt to flow from an insufficient number of jurors than from an excessive number. This remark refers to the number of jurors in the petit jury panel, and the possible prejudice to a defendant who is entitled to challenge a certain number of jurors drawn at the trial. It has no application to the instant case.

Defendants seek also to make some point of the residential qualification embodied in the 1933 amendment. In effect they argue that the presence of a juror from each of the representative districts of the county is an indispensable requirement to a legal grand jury. This is a very slender basis to support the main argument. No doubt the distribution of the grand jurors over the various districts of the county was deemed desirable and in accordance with many other similar requirements designed to satisfy local feeling; but that the inclusion of this residential requirement was intended to change the grand jury system in the manner now contended, we cannot believe.

We are of opinion that the Grand Jury of New Castle County was on September 22 and 23, 1959, lawfully constituted.