State vs. Caldwell et al.

---

No. 12,856.

STATE OF LOUISIANA VS. AMOS CALDWELL ET AL.

Accused were indicted by a grand jury composed of twelve, under the provisions of Art. 117 of new Constitution, and convicted by a petit jury of twelve, of whom *less* than the whole number concurred, under the provisions of Art. 116. The crime was burglary committed before adoption of Constitution of 1898. The defence was made that these provisions of the Constitution were *ex post facto* as applied to past offences, and that accused could be indicted only by a grand jury composed of sixteen, and convicted only by a concurrence of all twelve of the petit jury: *Held*, the provisions referred to operate changes in the method of procedure only, relate to the remedy and are in no sense *ex post facto* in character, and that Arts. 116 and 117 of the Constitution are self-operative.

ON APPEAL from the Ninth Judicial District Court for the Parish of Red River. *Hall, J.*

*M. J. Cunningham*, Attorney General, and *C. C. Egan*, District Attorney, *pro tem.*, for Plaintiff, Appellee.

———

*W. A. Wilkinson* and *J. M. Pincus* for Defendants, Appellants.

———

Submitted on briefs June 13, 1898.
Opinion handed down June 22, 1898.

———

The opinion of the Court was delivered by

BLANCHARD, J.    Defendants appeal from a conviction and sentence on a charge of burglary and larceny.

The indictment was found by a grand jury composed of twelve under the provisions of the recently adopted Constitution of the State.    It was met by a motion to quash on the ground that at the date of the alleged commission of the crimes charged the Constitution of 1898 had not been adopted, and, hence, the accused were entitled to have a grand jury empaneled, composed of sixteen of their countrymen, to pass upon the charges and return a true bill.    It was further alleged as ground to quash that Art. 117 of the new constitution, authorizing a grand jury of twelve, is not self-operative and requires legislative action to carry the same into effect.

The motion was denied and a bill reserved.

There was no error in this ruling.    The law is well settled that changes in the tribunal or method of procedure relate to the remedy, are always within the discretion of the law-making power, and are in no sense *ex post facto* so long as they deprive the accused of no substantial right.    Cooley Constitutional Limitations, pp. 272, 273, 361, 362; Am. and Eng. Ency. of Law, Vol. 7, p. 531.

That Art. 117 of the Constitution is self-operative is shown by its terms, which declare that its provisions shall " go into effect on the adoption of this constitution."

The court having charged the jury that nine of them concurring could find a verdict, defendants excepted and reserved a bill.    The grounds of exception are that the crime is charged to have been committed at a time antecedent to the adoption of the present Constitution, that the provisions of the Constitution in reference to trial by jury are not self-operative, that they require legislative action,

and that the enforcement of the same in the instant case would be to deprive defendants of a substantial right. It is averred in the bill that one of the jury, upon a poll following the announcement of the verdict, refused to assent to the same, and from this it is insisted that no legal conviction has ensued.

In answer to this the trial judge says: " Art. 116 of the Constitution of 1898 requires only nine of a jury to find a verdict in a case not capital. This is not *ex post facto*. It is a mere change in the remedy, or mode of procedure, which does not deprive the defendants of any right. Formerly no acquittal as well as no conviction could be had without the concurrence of twelve jurors. The change facilitates acquittals as much as convictions. It merely prevents mistrials. The change in the number of jurors who could convict is a mere change of remedy. This part of the Constitution is clearly self-executory. No legislation is necessary, or could add to, or take from, the provisions of Art. 116 as to the number of jurors ry to find a verdict.

" The first sentence of the article authorizes the Legislature to provide for the selection of jurors, but this provision has no relation to the remainder of the article. The third paragraph of the schedule of the Constitution of 1898 declares that the provisions of all laws inconsistent with it shall cease upon its adoption, except such as require legislation to enforce them, and the eighth paragraph declares that the new Constitution is in full force and effect from and after May 12, 1898, except as otherwise provided in it. Article 116 is, therefore, now in force and was properly applied in this case."

This is the first time the question has been raised under the recently adopted Constitution and the views above, so tersely and clearly expressed by our learned brother of the District Court, who was himself a distinguished member of the convention which framed the new organic law, meet our full approbation.

Mr. Cooley, in his work on Constitutional Limitations, pages 272, 273, states the law to be that so far as modes of procedure are concerned, a party has no more right, in a criminal than in a civil action, to insist that his case shall be disposed of under the law in force when the act to be investigated is charged to have taken place. Remedies must always be under the control of the Legislature, and it would create endless confusion in legal proceedings if every case

was to be conducted only in accordance with the rules of practice, and heard only by the court in existence when its facts arose. The Legislature may abolish courts and create new ones, and it may prescribe altogether different modes of procedure in its discretion, though it can not lawfully dispense with any of those substantial protections with which the existing law surrounds the person accused of crime.

So, too, on pages 361 and 362, he declares the State may give a new and additional remedy for a right already in existence, and it may abolish old remedies and substitute new. If a statute providing a remedy is repealed while proceedings are pending, such proceedings will be determined thereby unless the Legislature shall otherwise provide. Any rule or regulation in regard to the remedy which does not take away or impair the right itself can not be regarded as beyond the proper province of legislation.

An *ex post facto* law is one which is enacted after the offence has been committed, and which, in relation to it or its consequences, alters the situation of the accused to his disadvantage (A. and E. Ency. of Law, Vol. VII, p. 525).

The term is a technical one and relates only to penal and criminal proceedings which impose punishments or forfeitures, and not to civil proceedings which affect private rights retroactively. *Ib.*, Vol. III, p. 886.

It has been held that a law is not *ex post facto* because it changes the manner of summoning and making up the jury, as applied to past offences.

Nor because it reduces the number of peremptory challenges allowed the accused.

Nor because it increases the number of such challenges allowed the prosecution.

Nor because it permits amendments to pending indictments.

Nor because it authorizes the jury to fix the punishment at the trial, which, under the law in force at the time the offence was committed, was fixed by the court.

Nor because it makes the court the judge of the law, whereas at the time of the offence the jury was. Am. and Eng. Ency. of Law, Vol. 7, p. 531 (note).

In all these cases it was held the change affected the procedure only, and that the new law was applicable to the trial of the offence.

State vs. Caldwell et al.

So, too, we must hold with regard to the case at bar. The accused having committed the offence before the new law went into operation, can not claim the impairment of any substantial right because of indictment, trial and conviction thereunder. The new law does but relate to the remedy, or procedure, which it is the province of the law-making power to enact for the ascertainment, prosecution and conviction of crime. State vs. Bates (Utah), 47 Pac. 78; Lynn vs. State, 84 Md. 67; State vs. Taylor, 134 Mo. 109; State vs. Gay, 18 Mont. 51; Amer. Dig. 1897, p. 962, Sec. 53 (g).

Another bill of exception is leveled at the ruling of the court *a qua* admitting the confession of guilt made by the accused to one Sol. Canningan, called as a witness for the State. The objection was that the confession was not free and voluntary, but brought about by inducements held out. Also that the signature of one of the accused to the letter wherein the confession was made was not proven.

The trial judge states the confession was not offered or received as to Hagan Clark, one of the defendants, and that as to the other two, Amos Caldwell and William Clark, the evidence showed the note was written by Caldwell in presence of Clark, and was concurred in by the latter, who signed it; and that this note contained the same recitals the two had previously made voluntarily to Canningan, who was entrusted by them with the note for delivery to the person to whom it was intended. It seems that Canningan was the friend of the accused and went to the jail to see them, taking some tobacco for them. While there he said to Caldwell and William Clark: " If you will tell the truth about Mr. Carnes' money probably he will help you." Whereupon they told him to tell one of the parties (not Carnes) whose money had been stolen to come to them and they would tell him where his money was—that Hagan, meaning Hagan Clark, the other accused, had it. This was on Sunday. On Tuesday following Canningan saw the party (Mr. Terry) to whom the message was sent and delivered it. Whereupon Terry said to Canningan, " Tell them to tell you." Following this, Canningan again saw the parties and the incriminating note was written. All the parties accused and Canningan were colored. Canningan had nothing to do with the prosecution, was rather interested in getting the accused off as lightly as possible. He was the brother-in-law of William Clark. He was not commissioned by the prosecutors to see the accused and procure a confession from them. He merely expressed the opinion

that Mr. Carnes would probably help them if they would tell the truth about the money. He made no promise and was authorized to make none. He was not in the service of either Carnes or Terry and did not live on their plantations, but across the river some miles away. We agree with the judge below that "coming from such a source the mere suggestion that the prosecutor probably would help them does not amount to such an inducement as ought reasonably to attach such doubt to the confession as would exclude it." Especially so when it occurred more than two months after the crime, when the accused parties were in no confusion and laboring under no excitement nor special dread, and were free from improper influences.

We find no sufficient warrant for reversing the verdict and sentence appealed from, and, accordingly, the same stand affirmed.