660 So.2d 1189 (1995)
STATE ex rel. Ronald GLOVER
v.
STATE of Louisiana.
STATE of Louisiana
v.
Marvin YOUNG.
STATE of Louisiana
v.
Lester Carl WRIGHT.
Nos. 93-KH-2330, 94-KH-2101 and 94-KH-2197.
Supreme Court of Louisiana.
September 5, 1995.
*1191 Elizabeth W. Cole, Christa Hohmann, for applicant Ronald Glover.
Ronald Glover, pro se.
Richard P. Ieyoub, Attorney General, Harry F. Connick, District Attorney, Jack Peebles, Asst. Dist. Attorney, for respondent.
Keith Baker Nordyke, June E. Denlinger, for amici curiae George Elliott, O'Neil Ginn, Isidor Lopez, David Nealy, Timothy Morris, Norris Henderson, Stanley A. Smith, Checo Yancy, Edward Smith, Danny Sermon, George Witherspoon, Lue Sullivan, Beryl Carter, Gordon Bradford.
Ellis Paul Adams, Jr., Richard G. Munson, for amicus curiae Louisiana District Attorneys Association.
Robert L. Odinet, for amicus curiae State of Louisiana.
KIMBALL, Justice.[*]
We granted certiorari and consolidated these three cases to resolve the issue of the constitutionality of the time limit for mounting collateral attacks on final convictions found in La.C.Cr.P.art. 930.8. Petitioners and amici curiae[1] allege La.C.Cr.P. art. 930.8 violates the United States and Louisiana Constitutions. With respect to the federal Constitution, each claims Art. 930.8 violates the Due Process Clause of the Fourteenth Amendment, the Habeas Corpus Clause of Art. I, § 9, and the Ex Post Facto Clause of Art. 1, § 10. Regarding the Louisiana Constitution of 1974, petitioners and amici argue Art. 930.8 unconstitutionally suspends the writ of habeas corpus in violation of La. Const. art. I, § 21; violates the prohibition against ex post facto laws in Art. I, § 23, and deprives petitioners of their rights to due process and access to courts under La. *1192 Const. art. I, §§ 2 and 22. After analyzing Art. 930.8 along with relevant constitutional provisions and jurisprudential authorities, we conclude its limitations period violates neither the United States Constitution nor the Louisiana Constitution of 1974.

I. FACTS
On January 30, 1985, Ronald Glover pleaded guilty to three counts of aggravated crime against nature, three counts of armed robbery, three counts of forcible rape, four counts of simple kidnapping, and one count of attempted armed robbery. He received concurrent sentences totalling forty years at hard labor. On February 25, 1992, Glover filed a petition for post conviction relief in the Orleans Parish Criminal District Court. The district court denied his application on the merits on September 24, 1992, and Glover applied to the Louisiana Fourth Circuit Court of Appeal. On July 27, 1993, the court of appeal denied review of the judgment below, holding Glover's application had been untimely filed pursuant to the time bar in La.C.Cr.P. art. 930.8. State ex rel. Glover v. State, 93-1318 (La.App. 4th Cir.1993). We granted certiorari, State ex rel. Glover v. State, 93-2330 (La. 11/18/94), 646 So.2d 363, to decide whether the time limitations period of Art. 930.8 may be asserted by the state at any level of review, even when the district court has previously entertained a postconviction application on the merits.
Marvin Young pleaded guilty on June 25, 1990 to possession of stolen things. He was not sentenced by the district court, however, until January 29, 1991, several months after Art. 930.8 became effective on October 1, 1990. Young subsequently filed an application for post conviction relief on May 2, 1994, but his application was denied by the district court. The Louisiana Second Circuit Court of Appeal denied relief pursuant to La. C.Cr.P. art. 930.8 on June 30, 1994. State v. Young, 26701 (La.App. 2d Cir. 6/30/94). We granted certiorari, State v. Young, 94-2101 (La. 11/18/94), 646 So.2d 362, to settle the question of whether the three-year limit of Art. 930.8 may be applied prospectively to all inmates whose convictions and sentences became final after October 1, 1990. We also granted certiorari in this matter to answer the question of whether Art. 930.8(C), which requires the district court to give the defendant notice of the time limit, creates an enforceable right on behalf of an individual who was not told of the deadline in Art. 930.8.
Lester Carl Wright was convicted of armed robbery on June 5, 1987. Wright filed an application for post conviction relief on May 13, 1994. The district court denied his application, after concluding the application was procedurally barred by La.C.Cr.P. art. 930.8. The Louisiana Second Circuit Court of Appeal denied relief. State ex rel. Wright v. Whitley, 26789 (La.App. 2d Cir. 7/21/94), 641 So.2d 631. We granted certiorari, State v. Wright, 94-2197 (La. 11/18/94), 646 So.2d 362, to settle the issue of whether Art. 930.8 applies retroactively to convictions which became final before October 1, 1990. This date is important because the legislature provided a one-year period, from October 1, 1990 to October 1, 1991, for petitioners whose applications would have already been barred on October 1, 1990 to file applications for post conviction relief.

II. CONSTITUTIONAL ANALYSIS

A. Article 930.8
Louisiana Acts 1990, No. 1023 § 1, added La.C.Cr.P. art. 930.8 to Title XXXI-A of the Louisiana Code of Criminal Procedure.[2] Article *1193 930.8(A) provides that no application for post conviction relief shall be considered if it is filed more than three years after the judgment of conviction and sentence has become final, unless certain exceptions apply. Those exceptions cover situations in which: (1) the petitioner has proven, or the state has admitted, the existence of new facts; (2) an appellate court has announced a ruling setting up a new constitutional rule which applies retroactively, and the petitioner files his petition within one year of the ruling; or (3) the petitioner has been sentenced to death. As previously mentioned, the statute also contains a one-year grace period which gave petitioners whose applications would have been barred on October 1, 1990 until October 1, 1991 to file an application for post conviction relief. Article 930.8(B) provides that an application may be dismissed if it is filed within the three-year period, or beyond that limit but within one of the exceptions, when the occurrence of events not under the control of the state has prejudiced the state's ability to respond to the petition. Article 930.8(C) requires the sentencing court to inform the defendant of the prescriptive period for post conviction relief.

B. Federal Due Process Clause
Petitioners and amici argue Art. 930.8 violates their rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. While the United States Supreme Court has yet to address directly the issue of whether the United States Constitution requires states to provide post conviction remedies adequate to protect the federal constitutional rights of persons convicted in state criminal proceedings, it implied as much in Young v. Ragen, 337 U.S. 235, 69 S.Ct. 1073, 93 L.Ed. 1333 (1949) and Case v. Nebraska, 381 U.S. 336, 85 S.Ct. 1486, 14 L.Ed.2d 422 (1965).[3]
*1194 However, a careful review of subsequent United States Supreme Court jurisprudence reveals the United States Constitution imposes no such requirement. Beginning with its decision in United States v. MacCollom, 426 U.S. 317, 96 S.Ct. 2086, 48 L.Ed.2d 666 (1976), the United States Supreme Court began its retreat from the views expressed in dicta in Young and began to lay the seeds for its current view that the federal constitution does not require states to provide post conviction remedies for the vindication of federal rights. In MacCollom, a federal post conviction case, the Supreme Court upheld the validity of 28 U.S.C. § 753, a federal statute requiring movants under 28 U.S.C. § 2255 (the principal federal post-conviction remedy for persons convicted in a federal district court) to show both a particularized need and nonfrivolousness in order to obtain a free trial transcript. In dictum, Justice Rehnquist, writing for a four justice plurality, stated:
The Due Process Clause ... does not establish any right to an appeal ... and certainly does not establish any right to collaterally attack a final judgment of conviction.

See MacCollom, 426 U.S. at 322, 96 S.Ct. at 2090.
MacCollom's seminal role in the development of the Court's view on this issue became apparent, a decade later, when the Supreme Court decided Pennsylvania v. Finley, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). In Finley, a case involving a state prisoner seeking state post conviction relief, the Court concluded the United States Constitution does not require the states to appoint counsel to represent indigents in any state post conviction relief proceeding. With respect to post conviction relief in general, Chief Justice Rehnquist, writing for the Court, declared "states have no obligation" to provide post conviction relief, but when states do choose to provide such a remedy, the Due Process Clause does not require that the state supply a lawyer as well. Finley, 481 U.S. at 557, 107 S.Ct. at 1994.
Finally, in Murray v. Giarratano, 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989), the Supreme Court extended Finley to capital cases by holding that the United States Constitution does not require the appointment of counsel to represent applicants for post conviction relief in capital cases. Chief Justice Rehnquist, writing for a plurality, stated:
We think that these cases require the conclusion that the rule of Pennsylvania v. Finley should apply no differently in capital cases than in noncapital cases. State collateral proceedings are not constitutionally required as an adjunct to the state criminal proceedings and serve a different and more limited purpose than either the trial or appeal.

Murray, 492 U.S. at 10, 109 S.Ct. at 2770 (emphasis added).
Our analysis of the United States Supreme Court's decisions in MacCollom, Finley, and Murray convinces us that the United States Constitution does not require states to provide post conviction remedies for persons convicted in state courts so long as the states have provided some avenue of direct review of the conviction. Accordingly, if a state's failure to provide any post conviction relief procedure at all does not violate the Fourteenth Amendment Due Process Clause, then a fortiori, Art. 930.8, a state statute which merely limits an inmate's avenues for state post conviction relief, cannot violate that clause.

C. Federal Habeas Corpus Clause
Petitioners and amici also argue Art. 930.8 suspends the Writ of Habeas Corpus in violation of Art. I, § 9 of the United States Constitution. Article I, § 9 of the United States Constitution provides, in pertinent part:
The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.
We can easily dispose of petitioners' and amici's claims that Art. 930.8 violates Art. I, § 9 of the United States Constitution. The *1195 United States Supreme Court's decision in Gasquet v. Lapeyre, 242 U.S. 367, 37 S.Ct. 165, 61 L.Ed. 367 (1917),[4] made clear that Art. I, § 9 of the United States Constitution applies to actions of the federal government and not to actions of the states. As such, petitioners' arguments that Art. 930.8 violates Art. I, § 9 of the United States Constitution are without merit.

D. Louisiana Habeas Corpus Clause
Petitioners and amici also contend Art. 930.8 suspends the writ of habeas corpus, in violation of La. Const. art. I § 21, which provides that "[t]he writ of habeas corpus shall not be suspended."[5] Petitioners argue that Art. 930.8:
abolishes the right of review of persons who fail to apply [for post conviction relief] within the three year limit or in petitioners' cases the one year limit since their convictions occurred prior to the statute's enactment. In so doing, this article exceeds the bounds of legislative power and suspends the writ of habeas corpus.
Petitioners' brief at p. 5.
Current Louisiana statutory law distinguishes post conviction relief from habeas corpus relief. See La.C.Cr.P. art. 351; Wilkes, supra; Berrigan, La. Criminal Trial Prac. (2d Ed.), § 28.6 (1992); Cheney C. Joseph, Jr., Developments in the Law: Postconviction Relief, 41 La.L.Rev. 632, 632-33 (1981). The impetus for this distinction came nearly twenty years ago, in 1976, when this court appointed an ad hoc committee to study the concerns expressed by Louisiana's trial courts over the repetitive applications, unnecessary hearings, and administrative difficulties surrounding production of prisoners for habeas purposes. After the committee performed its assigned task, the legislature left to this court the task of adopting a new set of rules for applications for relief by convicted persons in custody. See 1976 La. Acts, No. 448. The new supreme court rules governing post conviction applications became effective on January 1, 1977 and were eventually incorporated into the Louisiana Code of Criminal Procedure. See 1980 La. Acts, No. 429.
Title IX of the Code of Criminal Procedure contains La.C.Cr.P. art. 351 et seq. (habeas corpus), while Title XXXI-A contains La. C.Cr.P. art. 924 et seq. (post conviction relief). Article 351, the article defining habeas corpus as "a writ commanding a person who has another in his custody to produce him before the court and to state the authority *1196 for the custody," states unambiguously that habeas corpus relief is not available to persons entitled to file an application for post conviction relief. Official Revision Comment (c) to Art. 351 distinguishes habeas corpus and post conviction relief, stating "[h]abeas corpus relief is not the proper procedural device for petitioners who may file applications for post conviction relief. Essentially, habeas corpus deals with pre-conviction complaints concerning custody." (emphasis added).
The writ of habeas corpus has been an integral part of this state's law for at least as long as Louisiana has been a state, but this court has not, until today, had the opportunity to address whether a particular piece of legislation constitutes a suspension of the writ. In our view, Art. 930.8 does not suspend the writ of habeas corpus because "suspension," insofar as Art. I, § 21 of this state's constitution is concerned, refers to suspension of the traditional common law writ of habeas corpus. Our basis for this conclusion stems, in part, from the fact that for over one hundred and sixty years Louisiana's constitutions have prohibited suspension of the writ of habeas corpus.[6] Traditionally, the writ of habeas corpus was used to: (1) insure that necessary pre-trial procedures were followed; (2) examine whether the person had been committed pursuant to judicial process; and (3) ascertain whether the committing court had jurisdiction. See, e.g., Swain v. Pressley, 430 U.S. 372, 385, 97 S.Ct. 1224, 1231, 51 L.Ed.2d 411 (1977) (Burger, Blackmun and Rehnquist, JJ. concurring in part and concurring in the judgment) (citing Oaks, Legal History in the High CourtHabeas Corpus, 64 Mich.L.Rev. 451, 468 (1966)).[7] Considering this historical framework, we find no basis for concluding that Art. 930.8, a modern post conviction relief procedure, which lies outside the scope of the writ of habeas corpus as the writ was understood at common law and which merely limits the time period during which an application for post conviction relief may be filed, constitutes a suspension of the writ of habeas corpus as that term was originally understood at common law. Accordingly, we hold that Art. 930.8 does not suspend the writ of habeas corpus in violation of Art. I, § 21 of the Louisiana Constitution of 1974.

E. Louisiana Due Process Clause and Right of Access to Courts
Petitioners and amici also argue Art. 930.8 violates state constitutional guarantees of due process as set out in La. Const. art. I, § 2 and of access to courts as set out in La. Const. art. I, § 22. These claims touch principally on the statute's retroactive application to those inmates convicted before Art. 930.8's effective date. Petitioners and amici argue that because inmates lack knowledge of the law and often face difficulty obtaining documents necessary to prosecute their claims, the time limit, especially the one-year period for those whose applications would have otherwise been barred on October 1, 1990, did not afford a reasonable time for these inmates to file as required by Louisiana law.
Article I, § 2 of the Louisiana Constitution of 1974 provides that "no person shall be deprived of life, liberty, or property, except by due process of law." One of the goals of Louisiana's system of justice is to provide both the accused and the state fair and prompt trials, appeals, and further proceedings to correct error. A legitimate concern, however, is that this process should also end within a reasonable period of time. As such, we believe the question, insofar as due process is concerned, is whether Art. 930.8 provides a petitioner with a reasonable opportunity to have his claims heard and *1197 determined, in light of the state's interest in preventing the litigation of stale or fraudulent claims. Michel v. Louisiana, 350 U.S. 91, 92-95, 76 S.Ct. 158, 160, 100 L.Ed. 83, 89 (1955); Jimenez v. Weinberger, 417 U.S. 628, 636, 94 S.Ct. 2496, 2501, 41 L.Ed.2d 363, 370 (1974); Logan v. Zimmerman Brush Co., 455 U.S. 422, 437, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265, 279 (1982). Cf. Reichenphader v. Allstate Ins., 418 So.2d 648, 649 (La.1982).
In determining whether the three year limitations period in Art. 930.8 provides inmates with a reasonable period in which to bring an action for post conviction relief, we note that post conviction relief, which is procedural in nature, and speaks to matters of remedy, is not criminal litigation per se; rather, post conviction relief proceedings, which are designed to allow petitioners to challenge the legality of their confinement, are hybrid, unique, and have both criminal and civil legal characteristics. State ex rel. Tassin v. Whitley, 602 So.2d 721 (La.1992); Lemmon v. Connick, 590 So.2d 574 (La. 1992); Harrison v. Norris, 569 So.2d 585 (La.App.2d Cir.1990); cf. Harris v. Nelson, 394 U.S. 286, 293-94, 89 S.Ct. 1082, 1087-88, 22 L.Ed.2d 281 (1969). As previously discussed, the post conviction reform measures undertaken pursuant to 1976 La.Acts, No. 448 and 1980 La.Acts, No. 429, as indicated supra, were aimed at streamlining Louisiana's former habeas procedure by easing the burden of repetitive applications, unnecessary hearings and administrative difficulties. The adoption of 1990 La.Acts, No. 1023, § 1 continued that policy. By not completely foreclosing the opportunity for post conviction relief in those cases involving new facts, new law, or where a death sentence has been imposed, and by providing a full three years (or one year for those who would have already been barred) for the filing of all other applications, Art. 930.8 strikes a balance between the competing interests of the state and the petitioners and provides a reasonable amount of time within which to file an application for post conviction relief.[8]
We also conclude the one-year period provided in Art. 930.8 does not violate the due process rights of petitioners Glover and Wright. Glover, whose conviction and sentence became final in 1985, had approximately six years, twice as long as persons affected by Art. 930.8 prospectively, to file a meaningful application for post conviction relief. Wright, convicted in 1987, had over four years to file an application. In our view, the one-year grace period afforded these petitioners a reasonable opportunity to file applications for post conviction relief and did not deprive them of their right to due process. Cf. Reichenphader, supra.
In a related vein, petitioners argue Art. 930.8 violates their right to access to courts under La. Const. art. I, § 22. Article I, § 22 of the Louisiana Constitution of 1974, which has no counterpart in the United States Constitution, provides:
All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for some injury to him in his person, property, reputation, or other rights.
We recognized in Crier v. Whitecloud, 496 So.2d 305, 310 (La.1986), that statutes of limitation are exclusively a legislative prerogative whereby the legislature makes a legislative determination that after a certain period of time an action can no longer be maintained. The legislature's prerogative, however, only extends to matters which do not violate constitutional rights. In this case, there is no violation of petitioners' right of access to courts because Art. I, § 22, a mandate to the judiciary to insure that all courts *1198 are open so that every person shall have an adequate remedy by due process of law, is not violated so long as a legislative measure, like Art. 930.8, does not deprive petitioners of their right to due process. In addition, while Art. 930.8 restricts the time limit during which some petitioners may apply for post conviction relief, this article demonstrates the degree to which persons convicted in Louisiana courts are afforded post conviction access to courts. The post-conviction relief process in Louisiana provides for an additional level of review for persons who have already been tried (or who have pleaded guilty)[9], who were convicted, and who had the right to seek judicial review of that conviction.[10] Because Art. 930.8 only deprives certain applicants (those without new facts, new law, and who have not been sentenced to death) of an unlimited time period within which to file an application for post conviction relief, it cannot be said that Art. 930.8 therefore denies those whom it affects of their right of access to courts under Art. I, § 22 of the Louisiana Constitution of 1974, in light of the additional level of review the same statute provides for.

F. Federal Ex Post Facto Clause
Petitioners and amici also argue that Art. 930.8, as applied to inmates convicted and sentenced before its effective date, is an ex post facto law which violates Art. I § 10 of the United States Constitution by "chang[ing] the consequences" of acts completed before the article's effective date.
Article I, § 10 of the United States Constitution forbids states from passing any "ex post facto law." While the text of the federal constitution does not define that term, its meaning has been understood since the United States Supreme Court's decision in Calder v. Bull, 3 Dall. 386, 390, 1 L.Ed. 648 (1798). In Calder, the Court outlined four categories of ex post facto laws: (1) a law making criminal, and subject to punishment, an activity which was innocent when originally done; (2) a law aggravating a crime or making it a greater crime than it was when originally committed; (3) a law aggravating a crime's punishment; and (4) a law altering the rules of evidence to require less or different testimony than was required at the time of the commission of the crime so as to make easier the conviction of the offender. Calder, 3 Dall. 386, 390, 1 L.Ed. 648 (1798).[11]
The Supreme Court of the United States has recognized two purposes behind the prohibition against ex post facto laws. First, it serves "to assure that legislative acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." Weaver v. Graham, 450 U.S. 24, 28-29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981). Secondly, it "restricts government power by restraining arbitrary and potentially vindictive legislation." Id.
Naturally, the clearest type of ex post facto laws are those which create a new substantive crime for conduct not criminal at the time the conduct occurred and which apply the prohibition against the new conduct retroactively. Charles E. Torcia, Wharton's Criminal Law, § 13 (15th Ed.1993); Lafave, Scott, supra at § 2.4. Similarly, statutes affecting criminal law by attempting to make conviction easier by eliminating a former element of an offense, taking away a defense formerly available, or changing the burden of proof have been held to be ex post facto. See Beazell v. Ohio, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925). Situations where a crime's penalty is increased, and the new penalty is applied retroactively have also been held ex post facto.
Before the United States Supreme Court's decision in Collins v. Youngblood, 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990), the Supreme Court had articulated the following test to determine whether a procedural change, other than changes in the rules of evidence, violated the ex post facto clause:
A procedural change which does not injuriously affect a substantial right to which the accused was entitled at the time of his *1199 offense is not ex post facto though retroactive; but it is otherwise if it does deprive him of a substantial right.
See Beazell v. Ohio, supra (the former law afforded jointly indicted defendants separate trials as a matter of right, but the new law only afforded separate trials at judge's discretion; held, not ex post facto because it did not affect a substantial right); Kring v. Missouri, 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506 (1883) (law in effect at the time of the offense provided that on a charge of first-degree murder a guilty plea of second degree murder served to acquit the defendant of first degree murder even if the plea was later set aside; law passed after the offense was committed provided that if plea to second degree murder is set aside, defendant may be tried for first degree murder; held, ex post facto change deprived defendant of a substantial right).
In Collins, the Court held that the retroactive application of a statute allowing appellate courts to reform an unauthorized verdict without remanding the case for a new trial did not violate the Ex Post Facto Clause. In so holding, the Court overruled Kring v. Missouri, supra, and Thompson v. Utah, 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898)[12] after concluding that these cases, which had broadened the scope of the definition of an ex post facto law, were not "consistent with the term `ex post facto law' at the time the Constitution was adopted." See Collins, 497 U.S. at 47, 110 S.Ct. at 2721. After Collins, a statute passes muster under the Ex Post Facto clause if it:
[D]oes not punish as a crime an act previously committed, which was innocent when done; nor make more burdensome the punishment for a crime, after its commission; nor deprive one charged with crime any defense available according to law at the time the act was committed.
Id.
The Court recently followed Collins in California Department of Corrections v. Morales, ___ U.S. ___, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995)[13], where the Court stated:
Our opinions in Lindsey, Weaver, and Miller suggested that enhancements to the measure of criminal punishment fall within the ex post facto prohibition because they operate to the "disadvantage" of covered offenders. See Lindsey [v. Washington], 301 U.S., 397 401 [,57 S.Ct. 797, 799, 81 L.Ed. 1182 (1937)]; Weaver, 450 U.S., at 29 [101 S.Ct. at 964]; Miller [v. Florida], 482 U.S. 423, 433[, 107 S.Ct. 2446, 2452-53, 96 L.Ed.2d 351 (1987)]. But that language was unnecessary to the results of those cases and is inconsistent with the framework developed in Collins v. Youngblood, 497 U.S. 37, 41[, 110 S.Ct. 2715, 2718, 111 L.Ed.2d 30] (1990). After Collins, the focus of the ex post facto inquiry is not whether a legislative change produces some ambiguous sort of "disadvantage," nor, as the dissent seems to suggest, *1200 on whether an amendment affects a prisoner's "opportunity to take advantage of provisions for early release," ... but on whether any such change alters the definition of criminal conduct or increases the penalty by which the crime is punishable.
Id. at ___, n. 3, 115 S.Ct. at 1602, n. 3 (emphasis in original).
Petitioners herein argue Art. 930.8 increases punishment after the commission of a crime and that "[b]y procedurally barring these [defaulted post conviction claims], the effect is one essentially changing the quantum of petitioners' punishment." Petitioners' Brief, p. 13. It cannot be said, however, that Art. 930.8 alters the substantive elements of any crime or "increases punishment." Rather, Art. 930.8 is a restriction on the time limit in which one, who has already been sentenced, may file an application for post conviction relief.[14] Indeed, the sentence is set by the sentencing court. In light of recent United States Supreme Court jurisprudence setting forth a narrow definition of what the federal Ex Post Facto Clause prohibits, we conclude that La. C.Cr.P. art. 930.8 does not violate Art. I, § 10 of the United States Constitution.

G. Louisiana Ex Post Facto Clause
Petitioners and amici also contend Art. 930.8 violates La. Const. art I, § 23 which prohibits the enactment of any ex post facto law. We disagree.
Current Louisiana cases address this issue by determining whether a law passed after the commission of an offense which in relation to that offense or its punishment alters the situation of a party to his disadvantage. To qualify as an ex post facto law under this inquiry, the suspect legislation: (1) must be passed after the date of the offense, (2) must relate to the offense or its punishment, and (3) must alter the situation of the accused to his disadvantage. See, e.g., Police Ass'n of New Orleans v. New Orleans, 94-1708 p. 21-22 (La. 1/17/95), 649 So.2d 951, 966 (Under La.Const. art. I., § 23, "[a]n ex post facto law is one passed after the commission of an offense which in relation to that offense or its consequences alters the situation of a party to its disadvantage."); State ex rel. Turner v. Maggio, 463 So.2d 1304, 1307 (La.1985) ("Ex post facto changes in the substance of a criminal penalty cannot work to the disadvantage of the accused."); State ex rel. Bickman v. Dees, 367 So.2d 283, 291 (La.1978) ("Any law passed after the commission of an offense which ... alters the situation of a party to his disadvantage is an ex post facto law.") (quoting Calder v. Bull, supra); State v. Sepulvado, 342 So.2d 630, 635 (La.1977) ("An ex post facto law ... is one which is passed after the ... commission of an act, which retroactively changes the legal consequences of such fact."); State v. Ferrie, 243 La. 416, 144 So.2d 380, 382 (1962) ("An ex post facto law [is] one enacted after the offense has been committed and *1201 which in relation to it or its consequences alters the situation of the accused to his disadvantage."); State v. Caldwell, 50 La. Ann. 666, 670, 23 So. 869 (1898).
Article 930.8 is not an ex post facto law under this formulation because it does not relate to an offense or its punishment. As previously stated, Art. 930.8 does not, in any way, change the essential elements of any conduct described as criminal in this state's criminal code. Therefore, it does not relate to an offense. Because Art. 930.8 does not satisfy these elements, it is not an ex post facto law as that term is currently understood in the jurisprudence of this state.[15]

III. PROCEDURAL ISSUES
The final two issues we must address are the effect of the trial judge's failure to inform the defendant of the limitations period for post conviction relief and whether Art. 930.8 is an absolute procedural bar which prohibits an appellate court from considering an application for post conviction relief, even when the trial court has reached an application's merits.

A.
In our view, Art. 930.8(C), which requires the trial court to inform the defendant of the limitations period for filing an application for post conviction relief, is supplicatory language and does not bestow an enforceable right upon an individual defendant. First, Art. 930.8 was designed to limit the time period for filing applications for post conviction relief to three years (one year for those whose applications would have already been barred by a three year limit) from the finality of the judgment of conviction and sentence. Secondly, Art. 930.8 accomplishes that result by precluding courts from considering an application for post conviction relief unless certain specifically enumerated exceptions apply. Third, while Art. 930.8(A) clearly and unambiguously sets forth the only exceptions to its limitations period, a trial court's failure to inform the defendant of the prescriptive period is not included within the exclusive list of exceptions to the application of the three year period in Art. 930.8(A). Fourth, while Art. 930.8(C) directs the trial court to inform the defendant of the prescriptive period at the time of sentencing, it does not provide a remedy for an individual defendant who is not told of the limitations period. As such, we conclude that while the legislature intended to notify defendants of Art. 930.8's limitations period, the legislature's broader aim was to limit the limitations period for applications for post conviction relief to three years unless certain specific exceptions apply and not to create a remedy for a trial court's failure to inform the defendant of the limitations period. Cf. State v. Peart, 621 So.2d 780, 784 (La.1993). We decline to create such a remedy in the absence of a clear expression of legislative intent in that regard. Accordingly, we hold that Art. 930.8(C) is merely a directive to the trial courts, the violation of which does not bestow an enforceable right in favor of an individual defendant.

B.
The trial court denied Glover's application on the merits without addressing the timeliness requirements in Art. 930.8. The court of appeal then denied review, holding that Glover's application was untimely pursuant to Art. 930.8. In our view, the fact that the trial court reached the merits in an untimely filed application for post conviction relief, when the application did not fit within one of the exceptions in Art. 930.8(A), did not preclude the court of appeal from raising Art. 930.8's time bar. Article 930.8(A) provides *1202 that "no application for post conviction relief shall be considered" if it is filed more than three years after the judgment of conviction and sentence have become final, unless one of Art. 930.8's exceptions apply. None of the exceptions to Art. 930.8's time limit were present, or even alleged, in Glover's post conviction relief application. As such, it was not error for the court of appeal to deny relief based on the time bar in Art. 930.8.

IV. CONCLUSION
Based on the foregoing, we conclude the three-year limitations period imposed by La. C.Cr.P. art. 930.8, considered along with the exceptions to it, satisfies the requirements of both the United States and Louisiana Constitutions. Accordingly, we affirm the judgments of the courts of appeal denying relief in the three instant applications.
AFFIRMED.
NOTES
[*] Judge Charles R. Lindsay, Louisiana Court of Appeal, Second Circuit, who was participating as Associate Justice Pro Tempore in place of Justice James L. Dennis, was recused and was not a member of the panel which heard and decided this case. See Rule IV, Part 2, § 3.
[1] While several parties filed amicus briefs in this matter, the term "amici," as used in this opinion, refers to the fourteen inmates at the Louisiana State Penitentiary who challenged the constitutionality of Article 930.8 in both state and federal court.
[2] In its entirety, Article 930.8 states:

A. No application for post conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than three years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922, unless any of the following apply:
(1) The application alleges, and the petitioner proves or the state admits, that the facts upon which the claim is predicated were not known to the petitioner or his attorney.
(2) The claim asserted in the petition is based upon a final ruling of an appellate court establishing a theretofore unknown interpretation of constitutional law and petitioner establishes that this interpretation is retroactively applicable to his case, and the petition is filed within one year of the finality of such ruling.
(3) The application would already be barred by the provisions of this Article, but the application is filed on or before October 1, 1991.
(4) The person asserting the claim has been sentenced to death.
B. An application for post conviction relief which is timely filed, or which is allowed under an exception to the time limitation as set forth in Paragraph A of this Article, shall be dismissed upon a showing by the state of prejudice to its ability to respond to, negate, or rebut the allegations of the petition caused by events not under the control of the state which have transpired since the date of original conviction, if the court finds, after a hearing limited to that issue, that the state's ability to respond to, negate, or rebut such allegations has been materially prejudiced thereby.
C. At the time of sentencing, the trial court shall inform the defendant of the prescriptive period for post conviction relief.
[3] In Young, an Illinois prisoner, who pleaded guilty to burglary and larceny, claimed Illinois violated his federal due process rights by not affording him a post trial procedure by which his federal rights could be vindicated. Chief Justice Vinson, writing for a unanimous court, noted: Of course, we do not review decisions which rest upon adequate nonfederal grounds, and of course Illinois may choose the procedure it deems appropriate for the vindication of federal rights ... But it is not simply a question of state procedure when a state court of last resort closes the door to any consideration of a claim of denial of a federal right ... We recognize the difficulties with which the Illinois Supreme Court is faced in adapting state procedures to the requirement that prisoners be given some clearly defined method by which they may raise claims of denial of federal rights. Nevertheless, the requirement must be met. If there is now no post-trial procedure by which federal rights may be vindicated in Illinois, we wish to be advised of that fact upon remand of this case. Young v. Ragen, 337 U.S. at 235-239, 238, 69 S.Ct. at 1074-75, 93 L.Ed. 1333 (1949) (citations omitted) (emphasis added).

For nearly two decades, courts and commentators construed this decision to require a constitutional duty on the states to provide post conviction remedies for any due process objection. Donald E. Wilkes, Jr., Federal & State Post Conviction Remedies and Relief, § 9-1 (1992).
In 1965, the Supreme Court granted certiorari in Case v. Nebraska, 381 U.S. 336, 85 S.Ct. 1486, 14 L.Ed.2d 422 (1965), for the stated purpose of deciding "whether the Fourteenth Amendment require[d] that the states afford state prisoners some adequate corrective process for the hearing and determination of claims of violation of federal constitutional guarantees." The Court did not answer this question, however, because after it granted certiorari, the Nebraska legislature enacted a statute creating a modern post conviction remedy. The Supreme Court vacated the state judgment and remanded the case to the Nebraska courts for proceedings under Nebraska's post conviction statute. However, Justices Brennan and Clark concurred separately and expressed the view that due process required states to furnish a post conviction remedy for the vindication of federal rights. Case v. Nebraska, 381 U.S. 336, 337, 85 S.Ct. 1486, 1487, 14 L.Ed.2d 422 (1965) (Clark, J., concurring); Case v. Nebraska, 381 U.S. 336, 340, 85 S.Ct. 1486, 1489, 14 L.Ed.2d 422 (1965) (Brennan, J., concurring). The Court's decision in Case v. Nebraska reinforced the already commonly held view that the United States Constitution required states to provide state post conviction remedies. See Wilkes, supra.
[4] Gasquet, a dangerous and insane person, was committed by order of the Criminal District Court for the Parish of Orleans to the state asylum for the criminally insane. He filed an application for a writ of habeas corpus in the court of appeal. The court of appeal held that he had recovered his sanity and ordered him discharged and released from custody. This court then held that the court of appeal had no jurisdiction to revoke the criminal district court's judgment which had committed Gasquet to the asylum. The United States Supreme Court granted certiorari and stated:

In the assignments of error it is said of this ruling [by the Louisiana Supreme Court], first, that it practically suspended the privilege of the writ of habeas corpus, contrary to § 9 of article 1 of the Constitution of the United States, and, second, that it denied the plaintiff in error the due process and equal protection guaranteed by the 14th Amendment, in that it did not give proper effect to certain provisions of the Constitution and statutes of the state, bearing upon the jurisdiction of the court of appeal and the supreme court. Both claims, in so far as the Federal Constitution is concerned, are so obviously ill founded and so certainly foreclosed by prior decisions that they afford no basis for invoking our jurisdiction. Section 9 of article 1, as has long been settled, is not restrictive of state, but only of national action ... And, as our decisions show, there is nothing in the clauses of the 14th Amendment guarantying [sic] due process and equal protection which converts an issue respecting the jurisdiction of a state court under the Constitution and statutes of the state into anything other than a question of state law, the decision of which by the state court of last resort is binding upon this court.
Gasquet, 242 U.S. at 368-69, 37 S.Ct. at 166 (emphasis added) (citations omitted).
[5] The writ of habeas corpus has long been a fixture of Louisiana law. The Louisiana Constitutions of 1921, 1913, 1898, 1879, 1864, 1852, 1845, and 1812 contained a suspension provision similar to the provision contained in the 1974 constitution. The version present in these constitutions provided that the privilege of the writ of habeas corpus could not be suspended unless required by the public safety in cases of rebellion or invasion while the Louisiana Constitution of 1868, adopted after the Civil War, provided, like the Constitution of 1974, that the privilege of the writ of habeas corpus could not be suspended.
[6] We are mindful that the suspension clause in the Louisiana Constitution of 1974 contains slightly different language than was present in previous constitutions. See note 5, supra. Our review of the debates of the constitutional convention convinces us, however, that the drafters did not intend any material deviation from the understanding of the previous suspension clauses. See State of Louisiana Constitutional Convention, Verbatim Transcripts, v. XIV (day 45), at 27-31.
[7] See also: Wilkes, supra at §§ 2-1 to 2-6 (complete, detailed history of the writ of habeas corpus from its origins in England); Woolhandler, Demodeling Habeas, 45 Stanford L.Rev. 575 (1993) and the authorities cited therein (detailed history of the development of the writ in this country and the evolution of various theories concerning its scope).
[8] Moreover, in State ex rel. Duhon v. Whitley, 92-1740 (La. 9/2/94), 642 So.2d 1273, this court recognized that district courts should exercise discretion in determining whether the interests of justice require that an applicant for post conviction relief be given an opportunity to amend and supplement a timely filed application for post conviction relief. See also State ex rel. Edge v. Whitley, 599 So.2d 1090 (La.1992) (Calogero C.J., concurring). We believe our decision in Duhon provides additional assistance to inmates facing the constraints of Art. 930.8 by ensuring that a petitioner who timely files an application for post conviction relief will, in the discretion of the trial court and when justice requires it, have the opportunity to amend and supplement his application.
[9] See La. Const.1974 Art. I, §§ 16 and 17.
[10] See La. Const.1974 Art. I, § 19.
[11] Commentators have interpreted the first three Calder factors as restrictions on the substantive criminal law and the fourth as a procedural restriction. See Lafave, Scott, Substantive Criminal Law, § 2.4 (1986).
[12] In Thompson, the Supreme Court held that a change in Utah law reducing the size of juries in criminal cases from twelve persons to eight persons deprived Thompson of a substantial right involved in his liberty and violated the ex post facto clause.
[13] Morales was sentenced to fifteen years to life for the 1980 murder of his wife and became eligible for parole in 1990. As required by California law, the Board of Prison Terms held a hearing in 1989, at which time it found respondent unsuitable for parole for several reasons, including the fact that he had murdered his wife while on parole for an earlier murder. Morales would have been entitled to subsequent suitability hearings annually under the law in place when he murdered his wife. The law was amended in 1981, however, to allow the board to defer subsequent hearings, for up to three years if a prisoner had been convicted of more than one offense involving the taking of a life, if the board concluded that it was not reasonable to expect that parole would be granted at a hearing during the intervening years and stated the basis for that finding. Pursuant to this amendment, the board scheduled Morales' next hearing for 1992. Morales then filed a federal habeas corpus petition, asserting that as applied to him, the 1981 amendment constituted an ex post facto law. The District Court denied the petition, but the Court of Appeals reversed, holding that the retrospective law made a parole hearing less accessible to Morales and thus effectively increased his sentence in violation of the Ex Post Facto Clause. The United States Supreme Court held that the amendment's application to prisoners, like Morales, who committed their crimes before the amendment was enacted was not a violation of the Ex Post Facto Clause.
[14] Petitioners' argument on this point is rather similar to the respondent's arguments in Morales. See supra at note 13. After concluding that the 1981 amendment simply altered the method to be followed in fixing a parole release date and did not increase Morales' punishment, Justice Thomas, writing for the majority stated:

Respondent's approach would require that we invalidate any of a number of minor (and perhaps inevitable) mechanical changes that might produce some remote risk of impact on a prisoner's expected term of confinement. Under respondent's approach, the judiciary would be charged under the Ex Post Facto Clause with the micromanagement of an endless array of legislative adjustments to parole and sentencing procedures including such innocuous adjustments as changes to the membership of the Board of Prison Terms, restrictions on the hours that prisoners may use the prison law library, reductions in the duration of the parole hearing, restrictions on the time allotted for a convicted defendant's right of allocution before a sentencing judge, and page limitations on a defendant's objections to presentence reports or on documents seeking a pardon from the governor. These and countless other changes might create some speculative, attenuated risk of affecting a prisoner's actual term of confinement by making it more difficult for him to make a persuasive case for early release, but that fact alone cannot end the matter for ex post facto purposes.
Morales, ___ U.S. at ___, 115 S.Ct. at 1602 (emphasis added). Similarly, a limitations period which shortens the period during which a petitioner may apply for post conviction relief, a procedure wherein a petitioner attempts to make a persuasive case for early release, only has a speculative or attenuated risk of affecting a prisoner's actual term of confinement, and is not an increase in punishment.
[15] We note, however, that recent United States Supreme Court decisions interpreting the federal Ex Post Facto Clause have restated, and narrowed, the protections offered by the federal clause. When the United States Supreme Court overruled Kring v. Missouri and Thompson v. Utah, cases which contained relatively broad formulations of the definition of an ex post facto law, it voided definitions of ex post facto laws which had included language defining as "ex post facto" certain laws, which in relation to an offense or its consequences, altered the situation of a party to his disadvantage. Because Art. 930.8 does not relate to an offense or its punishment, we can dispose of petitioners' and amici's contentions that Art. 930.8 is an ex post facto law without analyzing the effect of the United States Supreme Court's decisions in Collins and Morales on the future viability of the current interpretation of this state's ex post facto clause.