WILLIAMS, C.J.
*693 The juvenile, W.A.P., was adjudicated a delinquent youth for the offense of third degree rape, a violation of La. R.S. 14:43. The disposition was to commit him to the Louisiana Office of Juvenile Justice (OJJ) for three years, with all but one month suspended to be served in an unsecure facility, and three years of supervised probation. W.A.P. now appeals. For the following reasons, we affirm.
FACTS
The record shows that on September 16, 2017, around 8:00 p.m., L.B., a 15-year-old high school student, attended a party with three of her friends. The party was held at a residence in Monroe, Louisiana. During this teenage party, the homeowners discovered there was alcohol present and threatened to call the police. Some of the teenagers in attendance walked from the backyard of the house to an adjacent park, where they continued to drink. L.B. later admitted to consuming two bottles of hard lemonade, which she took from home, and unknown alcohol "off the table in a bowl" at the party. At some point, L.B.'s friends were unable to find her and began looking for her in the park. L.B. was found lying on the ground in the park, with W.A.P. seen fixing his shorts and running away snickering and yelling about having sex. L.B.'s friends helped her get up, located her phone and her shoes. As they were walking back from the park, a friend noticed blood on L.B. and asked what happened. L.B. began to cry and explain that she said no many times, but W.A.P. did not stop. L.B. called her mother, who came immediately to pick her up from the scene.
After arriving home, L.B.'s mother took photographs, but due to the continuous bleeding her mother took her to St. Francis Hospital. Once at the hospital, L.B. was seen by a S.A.N.E (Sex Assault Nurse Examiner) nurse, who noted lacerations of the girl's vaginal area. An emergency room physician evaluated L.B. to determine if surgery or anything else needed to be done due to the girl's injuries and the excessive amount of blood loss. L.B. was released from the hospital the next day and four days later, she saw Dr. Meade O'Boyle, a pediatrician board certified in child abuse and neglect. L.B. was also interviewed by Monroe Police Detective Stephen Snowberger.
In January 2018, the state filed a petition to declare W.A.P. a delinquent, alleging third degree rape ( La. R.S. 14:43 ). W.A.P. was arraigned and entered a denial. The state later filed an amended petition to declare W.A.P. a delinquent, alleging that he committed third degree rape by having vaginal sexual intercourse without lawful consent of the victim contrary to the provisions of R.S. 14:43. In August 2018, at the close of evidence, the trial court adjudicated W.A.P. a delinquent for the offense of third degree rape.
At the disposition hearing, the trial court noted its review of the predisposition investigation (P.D.I.) and the recommendation of the OJJ. The trial court ordered that W.A.P.'s disposition was commitment to OJJ for a period of three years, all but one month suspended and to be served in a non-secure detention center. The trial court also placed W.A.P. on three years of supervised probation with conditions, including a curfew, completion of sexual offender therapy, no contact with the victim and no unsupervised access to the internet or to social media. This appeal followed.
DISCUSSION
In three assignments of error, W.A.P. contends the evidence was insufficient to support his conviction. W.A.P. first argues that the trial court erred in finding that L.B. was in a stupor or abnormal condition *694 of mind because evidence showing the mere consumption of alcohol is not enough to establish that the victim is in a stupor.
In evaluating the sufficiency of evidence to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S. Ct. 2781, 61 L.Ed. 2d 560 (1979) ; State v. Robinson , 50,643 (La. App. 2 Cir. 6/22/16), 197 So.3d 717, writ denied , 2016-1419 (La. 5/19/17), 221 So.3d 78. To adjudicate a child delinquent, the state must prove beyond a reasonable doubt that the child committed the delinquent act alleged in the petition. La. Ch.C. art. 883. The standard for the state's burden of proof in a juvenile delinquency proceeding is no less strenuous then the standard of proof required in a criminal proceeding against an adult. State in the Interest of A.G. , 630 So.2d 909 (La. App. 4 Cir. 1993).
La. Const. art. V, § 10 (B) mandates that an appellate court review both law and facts when reviewing juvenile adjudications. Therefore, as in the review of civil cases, a factual finding made by a trial court in a juvenile adjudication may not be disturbed by an appellate court unless the record evidence as a whole does not furnish a basis for it, or it is clearly wrong. See State ex rel. E.D.C. , 39,892 (La. App. 2 Cir. 5/11/05), 903 So.2d 571, writ denied , 2005-1568 (La. 1/27/06), 922 So.2d 544 ; State in Interest of S.S. , 557 So.2d 407 (La. App. 4 Cir. 1990).
Third degree rape is committed when the sexual intercourse is deemed to be without the lawful consent of a victim because it is committed when the victim is incapable of resisting or of understanding the nature of the act by reason of a stupor or abnormal condition of mind produced by an intoxicating agent and the offender knew or should have known of the victim's incapacity. La. R.S. 14:43(A)(1). Third degree rape is also committed when the offender acts without the victim's consent. La. R.S. 14:43(A)(4).
A defendant may be convicted of simple rape (third degree rape) when the victim's capacity to resist was negated by an abnormal condition or state of mind produced by alcohol consumption. State v. Porter , 93-1106 (La. 7/5/94), 639 So.2d 1137. The element of a stupor or abnormal condition of the mind produced by an intoxicating agent, such as alcohol, does not require an unaware victim with no capacity to resist, but rather an agent-influenced incapacity to effectively resist the advances of the perpetrator. The degree of alcohol influence is for the fact finder to decide. See State v. Porter , supra ; State v. Kelly , 51,701 (La. App. 2 Cir. 5/23/18), 244 So.3d 1251. The provisions of La. R.S. 14:43 criminalize behavior which takes advantage of a person who has had too much to drink and participates in an act to which he or she would not otherwise have consented. State v. Kelly, supra .
In the present case, L.B.'s mother testified that her daughter was recently prescribed Adderall, which is an amphetamine, and that she had taken the prescription medication on the day of the party. L.B.'s mother stated that the girl admitted to taking two alcoholic beverages from their house. L.B.'s mother was aware that L.B. had been drinking at the party and consumed enough alcohol to be considered legally drunk, but was not sure of the actual amount of alcohol used.
Dr. Robert Kerry testified that he saw L.B. when she arrived at the emergency room after the incident. Dr. Kerry stated that a toxicology test showed that L.B.'s blood alcohol level was 123 and that the *695 current legal intoxication level is .08 or 80 if you move the decimal. Dr. Kerry testified that L.B. stated that she had consumed alcohol that evening and listed Adderall as one of her routine medications. Dr. Kerry confirmed that L.B.'s blood alcohol level was 1½ times greater than the limit for an adult to operate a vehicle, plus she tested positive for amphetamines.
Teresa Daniel, R.N., testified she was the S.A.N.E. nurse who examined L.B. when she presented to the St. Francis emergency room. Nurse Daniel stated that L.B. indicated that she had consumed alcohol and had taken Adderall, an amphetamine. Nurse Daniel testified that the mixture of alcohol and amphetamines was not good for a person's health and could cloud one's judgment.
Dr. Meade O'Boyle testified that she saw L.B., who said she had been drinking prior to the incident. Dr. O'Boyle stated that the medical records showed that the child's blood alcohol level was .123 and that such a level was inconsistent with a small amount of drinking. Dr. O'Boyle opined that L.B. had been impaired and unable to give consent because of her level of intoxication at the time.
The record shows that sexual intercourse occurred between L.B. and W.A.P. and that L.B. was under the influence of both alcohol and amphetamine. L.B. testified that she had been drinking alcohol at the time and had previously taken her prescribed Adderall. Dr. Kerry and Nurse Daniel testified that L.B.'s blood alcohol level was .123 and that she tested positive for amphetamines. Dr. O'Boyle opined that L.B. could not have consented with such a level of intoxication. As the court stated in Porter , the element of stupor or abnormal condition of the mind produced by an intoxicating agent, such as alcohol, does not require an unaware victim with no capacity to resist, but rather an agent-influenced incapacity to effectively resist the advance of a predator. Thus, the evidence presented supports a finding by the trial court that L.B. was unable to consent to sex and incapable of resisting the sexual aggression of W.A.P. because of her impaired condition of mind as a result of being under the influence of the intoxicating agents of alcohol and amphetamines. This assignment of error lacks merit.
W.A.P. asserts that the trial court erred in finding that he knew or should have known of L.B.'s stupor or abnormal condition of mind. He argues the state did not prove such knowledge because the evidence did not show that he gave the alcohol to the victim or saw her drinking.
Contrary to W.A.P.'s assertion, the evidence is sufficient to support a finding that W.A.P. knew or should have known of L.B.'s impaired condition of mind. The offense of third degree rape does not require that the accused be the person who has created the stupor or abnormal condition of mind, i.e. provided the alcohol. Instead, the law requires only that the accused know or have reason to know of the condition. The parties stipulated that W.A.P. freely and voluntarily waived his rights and gave a statement to Detective Snowberger and it is this statement that Detective Snowberger referenced during trial. Detective Snowberger testified that W.A.P. "said that he believed L.B. was drunk." Although at trial W.A.P. denied making this statement to Detective Snowberger, the trial court heard the testimony and considered the credibility of the individuals. The trial court is given great deference in assessing the credibility of witnesses and could reasonably have determined that W.A.P. was not telling the truth at trial in denying that he told police that he believed L.B. was drunk at the time of the incident. The trial court accepted Detective Snowberger's testimony regarding *696 W.A.P.'s knowledge of L.B.'s intoxication. Viewing the evidence in the light most favorable to the state, we find the evidence sufficient to show that W.A.P. knew and took advantage of L.B.'s impaired condition of mind in committing the offense. This assignment of error lacks merit.
W.A.P. contends the trial court erred in finding that his interaction with the victim was not consensual. He argues that there is not a sufficient basis to convict for lack of consent under R.S. 14:43(A)(4) because the trial court's ruling addresses only factors of incapacity under R.S. 14:43(A)(1).
A fact-trier is not constitutionally required to agree on a single theory to convict a defendant where the evidence supports an instruction as to alternative theories. Schad v. Arizona , 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991). A conviction can be upheld if there is sufficient evidence presented on any of the alternative theories with which the fact-trier was charged. State v. Vergo , 594 So.2d 1360 (La. App. 2 Cir.), writ denied , 598 So.2d 373 (La. 1992). Similarly, if the evidence, considered in the light most favorable to the state, is sufficient to prove any theory under the applicable statute, the conviction will be upheld.
In this case, L.B. testified that she walked to the park to find her friends and that she pulled away from W.A.P. when he started kissing her. L.B. stated that she fell when W.A.P. pushed her and he then pulled down her pants and stuck his finger in her vagina. L.B. testified that she told W.A.P. to stop what he was doing more than once, but he refused. L.B. stated that when her friends approached, W.A.P. stood up and ran away.
W.A.P. testified that when he and L.B. went to the park and began having sex, she did not say stop or tell him don't do this. W.A.P. acknowledged that when her friends approached, he got dressed and ran off. W.A.P. testified that when he later saw blood on his clothes, he did not go back to check on L.B.
Nurse Daniel testified that she examined L.B.'s genital area and found lacerations on the vaginal opening and a cut on the hymen. Nurse Daniel described these injuries as being caused by blunt force. Nurse Daniel also testified that the excessive bleeding and severe laceration of the victim's vaginal area were uncommon and concerning, which is why she contacted Dr. Kerry to make sure that suturing or some type of repair was not needed. Nurse Daniel opined that the girl's injuries were not typical of consensual sex.
Dr. O'Boyle testified that she examined L.B. four days after the incident and found extensive tears, trauma, bruising, swelling and active bleeding of the girl's vaginal wall. Dr. O'Boyle stated that there was a complete avulsion of L.B.'s vagina in two areas with a lot of bruising. Dr. O'Boyle opined that L.B.'s significant injuries were inconsistent with consensual sex and resulted from violence.
The trial court took into consideration the witness testimony and medical evidence presented and found that L.B. lacked the ability to process what was happening due to her intoxication. Thus, the trial court determined that the state met its burden of proof by establishing a theory for conviction under R.S. 14:43(A)(1) to adjudicate W.A.P. as a delinquent for the offense of third degree rape. This conclusion is reasonably supported by the evidence. In addition, the state presented the victim's testimony that she told W.A.P. to stop what he was doing and the medical records documenting L.B.'s severe injuries, which indicated that the sexual encounter was nonconsensual. Further, W.A.P.'s acts of running away from the *697 scene and failing to check on L.B.'s condition after seeing blood on his clothes were not consistent with a consensual interaction. When viewed in a light most favorable to the prosecution, the evidence produced at trial was sufficient to support a finding that W.A.P. acted without L.B.'s consent in violation of La. R.S. 14:43(A)(4). Accordingly, based upon the evidence in this record, the trial court did not err in adjudicating W.A.P. delinquent for the offense of third degree rape. The assignment of error lacks merit.
Error Patent
In reviewing the record for error patent, we note that at the time of disposition, the trial court failed to advise W.A.P. of the time period within which to apply for post-conviction relief. The Louisiana Supreme Court has held that La. C.Cr.P. art. 930.8(C), which requires the trial court to inform the defendant of the limitation period for filing an application for post-conviction relief, is supplicatory language which does not bestow an enforceable right on an individual defendant. State ex rel. Glover v. State , 93-2330 (La. 9/5/95), 660 So.2d 1189. Although no similar provisions exist in the Children's Code, La. Ch.C. art. 104 provides that when the Children's Code is silent, the Louisiana Code of Criminal Procedure applies. Thus, the juvenile should be advised of the time limitation for seeking post-conviction relief. See State in Interest of A.H. , 95-1094 (La. App. 3 Cir. 1/31/96), 670 So.2d 361. We now advise W.A.P. by this opinion that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence (adjudication and disposition) have become final under the provisions of La. C.Cr.P. arts. 914 or 922. See State v. Pugh , 40,159 (La. App. 2 Cir. 9/21/05), 911 So.2d 898.
CONCLUSION
For the foregoing reasons, W.A.P.'s adjudication and disposition are affirmed.
AFFIRMED.